Steven WORKMAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9804–CR–221.

Supreme Court of Indiana.

Sept. 28, 1999.

Kurt A. Young, Nashville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Steven Workman was convicted of the murder of his ex-wife, Lesia Workman, and the abuse of her corpse. He was sentenced to sixty-five years imprisonment and contests two issues in this direct appeal. Workman claims that the trial court improperly denied his motion for a directed verdict and improperly enhanced his murder sentence.

### Factual and Procedural Background

Lesia and Workman were divorced in December 1996, but Lesia allowed Workman to live with her temporarily. On the evening of January 23, 1997, Lesia went with her three-year-old son Jacob to the home of a co-worker to have her windshield wiper pump fixed and then stayed for dinner with the co-worker and his wife. While Lesia was at her co-worker's house, Workman called Angela Crouch to find Lesia. Crouch was a good friend of Lesia and was also Jacob's babysitter. Crouch told Workman that Lesia was having her windshield wipers fixed. Less than an hour later, Workman called Crouch again and spoke to her husband who told Workman that Lesia was not at the Crouch's house.

When Lesia arrived home, she and Workman began arguing about where she had been. Lesia told Workman that it was none of his business where she and Jacob went. After Lesia gave Jacob a bath, she put him in her bed and they watched television. Crouch, concerned over the prior phone calls, called Lesia around 9:30

p.m. to make sure she was all right. Lesia said that she and Workman were fighting and that he had been drinking, but that there was nothing to worry about. Sometime after the telephone call from Crouch, Workman loaded his rifle, went into Lesia's bedroom, and shot her in the head while Jacob watched.

Around 5:30 the next morning, Workman called Crouch and Lesia's office to tell them Lesia was sick and would not be going to work that day. The women from Lesia's office were concerned and attempted to call Lesia at home to see how she was. Workman told them she was sleeping, but allowed them to talk with Jacob who was crying in the background. Jacob told the women that "my mommy's nose is bleeding." Workman then took the phone back, told them that was normal when Lesia was sick, and hung up. Lesia's co-workers called Crouch to express their concern. Crouch twice attempted to call Lesia, but Workman each time answered and hung up on her. Crouch then called the police. Approximately ten minutes later, Workman called Crouch and began yelling at her, accusing her of "ruining everything." A police officer had arrived at Workman's home, but when no one answered the door, the police officer contacted the SWAT team and negotiators. Several hours later, Workman came out of the house and was taken into custody.

The police found Jacob inside the house and also found Lesia's body, lying face up on the bed, wearing only a short robe that had been pulled apart. Her legs were separated and her hands were under her hips. The police also found a rifle, several spent casings, and a dead cat. Jacob was interviewed by the police and told them that "daddy pointed a black thing at my mommy and she got a nose bleed. After daddy pointed a black thing at mommy there was a bang and then a nose bleed." Workman confessed to shooting his ex-wife during the police interrogation and also admitted that he attempted to have intercourse with her body on the morning after

the shooting. Workman said he could not go through with it because of the blood on the bed. He did however place his fingers in her vagina. During this interview, he also confessed to killing the cat.

At trial, Workman testified that he had been drinking excessively the day of the murder and had shot Lesia once, but did not remember firing any other shots. He disclaimed any memory of doing anything to the corpse or of talking to the detectives about the murder. Workman waived a jury trial and was convicted of murder and abuse of a corpse in a bench trial. The trial court sentenced him to sixty-five years imprisonment for murder and three years for abuse of a corpse, to run concurrently.

## I. Involuntary Dismissal

■ At the close of the State's case, Workman moved for a directed verdict on the abuse of corpse charge. Indiana Trial Rule 50 governing directed verdicts, otherwise known as judgments on the evidence, is not applicable to bench trials. We will address the motion as a Trial Rule 41(B) motion for an involuntary dismissal. *See State v. Vowels*, 535 N.E.2d 146 (Ind.Ct. App.1989); *State v. Mayfield*, 536 N.E.2d 294 (Ind.Ct.App.1989). Workman claims that the trial court erred by denying this motion because the only evidence supporting the abuse of corpse charge was Workman's confession.

### A. Corpus Delicti

■ Workman contests the failure to dismiss based on the corpus delicti rule. In Indiana, a crime may not be proven based solely on a confession, *Sweeney v. State*, 704 N.E.2d 86, 111 (Ind.1998), and admission of a confession requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct. *Stevens v. State*, 691 N.E.2d 412, 424–25 (Ind.1997). However, this evidence need not prove that a crime was committed beyond a reasonable doubt, but merely "provide an inference that a

crime was committed." *Id.* at 425 (citing *Johnson v. State,* 653 N.E.2d 478, 480 (Ind. 1995)). Finally, this inference of a crime may be established by circumstantial evidence. *See Sweeney,* 704 N.E.2d at 112.

 Workman's argument fails for the reason that he confessed to murder as well as abuse of a corpse. "[W]here a defendant confesses to several crimes of varying severity within a single criminal episode, strict and separate application of the corpus delicti rule to each offense adds little to the ultimate reliability of the confession once independent evidence of the principal crime is introduced." *Willoughby v. State,* 552 N.E.2d 462, 467 (Ind.1990). The confession was admissible without independent evidence of the abuse of the corpse, given that there was ample independent evidence of the principal crime of murder, to which Workman also confessed.

Workman claims that the abuse of corpse and murder were not part of the same criminal episode. There is no case law interpreting the definition of "criminal episode" in the corpus delicti context, but a recent Court of Appeals decision explained the meaning of "criminal episode" in the sentencing context. *See Flynn v. State,* 702 N.E.2d 741, 749 (Ind.Ct.App.1998). "[E]pisode means an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." *Id.* (quoting *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind. Ct.App.1995)). Indiana Code § 35–50–1–2(b) defines an episode of criminal conduct as "a connected series of offenses that are closely related in time, place, and circumstance." We are not convinced that a separation of several hours ends the criminal episode when the defendant is still in the house with the victim's body and is attempting to cover up the crime by calling co-workers and friends to tell them the victim is sick. The trial court did not err by admitting evidence of Workman's confession regarding the abuse of corpse charge.

### B. *Sufficiency of Evidence*

 When ruling on a motion for an involuntary dismissal in a bench trial, the trial court "may reconcile, reject, accept or weigh the evidence and determine the credibility of the witnesses ... [and thereby] make an ultimate conclusion in the case based solely upon the evidence presented by the State." *Vowels,* 535 N.E.2d at 147. The defendant's motion is essentially a test of the sufficiency of the State's evidence. A motion for involuntary dismissal in a criminal case should be granted if the State "fail[s] to prove the essential elements of the offense beyond a reasonable doubt. ..." *Id.*

 The trial court did not err by denying Workman's motion. Workman's conviction for abuse of a corpse was based on both his confession and the corroborating evidence concerning Lesia's body. It is the trial court's duty to weigh the evidence and determine the credibility of the witnesses. There is sufficient evidence to support the trial court's decision.

### II. Abuse of a Corpse as an Improper Aggravator

Workman also claims that the trial court improperly considered the abuse of Lesia's corpse as an aggravator to impose an enhanced sentence for murder. He appears to argue that the use of abuse of corpse as an aggravator is a violation of double jeopardy provisions as well as an improper aggravator.

 Workman's enhanced sentence, based in part on the abuse of Lesia's corpse, does not present a double jeopardy issue at all. It is not a separate offense or conviction, but merely the enhancement of a sentence for one felony due to the facts and circumstances surrounding the felony. *Cf. Poore v. State,* 685 N.E.2d 36, 39 & n. 3 (Ind.1997) (act of enhancing a sentence based on habitual offender finding does not constitute double jeopardy).

 Furthermore, the enhancement is proper as a matter of sentencing law. Decisions to enhance presumptive sentences are within the discretion of the trial court and will be reversed only for an abuse of that discretion. *See Brown v. State,* 698 N.E.2d 779, 781, 783 (Ind.1998). "Even a single aggravating circumstance may be sufficient to sustain an enhanced sentence." *Sauerheber v. State,* 698 N.E.2d 796, 806 (Ind.1998) (citing *Brown v. State,* 667 N.E.2d 1115, 1117 (Ind.1996)). The "nature and circumstances" of a crime is a proper aggravator. *See Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999).

During sentencing the trial court listed as aggravators Workman's prior criminal history, the nature and circumstances of the crime including the abuse of corpse and killing Lesia in front of her young child, and Workman's character as shown by his lies to Lesia's co-workers and the police. Workman's prior criminal history is a statutory aggravating circumstance. *See* IND.CODE § 35–38–1–7.1(b)(2) (1998). The nature and circumstances of the crime including killing a mother in front of her child, abusing the body of the deceased, and killing the cat, is a proper aggravator. Because the trial court found three aggravating circumstances, one of which was statutory, and only one factor may be sufficient to support an enhanced sentence, the enhancement was not error.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.