## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 04 2015, 9:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erik Toombs,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 4, 2015

Court of Appeals Case No.
49A02-1408-CR-524

Appeal from the
Marion Superior Court

The Honorable David Hooper,
Judge Pro Tempore

Cause No. 49F18-1403-FD-13042

**Kirsch, Judge.**

Erik Toombs was convicted after a bench trial of operating a vehicle as a habitual traffic violator[1] ("HTV") as a Class D felony. He appeals, raising the following restated and consolidated issue: whether the evidence presented at trial was sufficient to support Toombs's conviction.

We affirm.

## Facts and Procedural History

On March 13, 2014, Indianapolis Metropolitan Police Department Officer Cathy Faulk observed that the license plate was expired on the vehicle that Toombs was driving and initiated a traffic stop. When Officer Faulk requested Toombs's driver's license and registration, he gave her his Indiana driver's license bearing the name of "Erik Toombs." *Tr.* at 10. Officer Faulk ran Toombs's information through the Bureau of Motor Vehicles ("BMV") and discovered that Toombs's driving privileges had been suspended because he was a HTV. Specifically, his driving privileges had been suspended effective November 15, 2013, and a notice of that suspension had been mailed to Toombs's address at 1920 Charles Street in Anderson, Indiana on October 16, 2013. Officer Faulk arrested Toombs.

---

[1] *See* Ind. Code § 9-30-10-16(a)(1). We note that, effective July 1, 2014, a new version of this statute was enacted. Because Toombs committed his crime prior to July 1, 2014, we will apply the statute in effect at the time he committed his crime.

[4]     The State charged Toombs with Class D felony operating a vehicle while a HTV. At the close of the State's evidence at Toombs's bench trial, Toombs moved for involuntary dismissal on the basis that the State failed to sufficiently identify the BMV record contained in State's Exhibit 1 with Toombs. The trial court denied the motion.

[5]     In his presentation of evidence, Toombs challenged his knowledge of his license suspension. His fiancée, Andrea Rule, testified that she and Toombs had lived at the address of 1920 Charles Street in Anderson for three years. *Tr.* at 23. Because the street where they resided was busy and narrow, their mailbox was frequently knocked down. Rule testified that she usually was the one who retrieved the mail, but she could not remember whether the mailbox was knocked down in October or November 2013. *Id*. at 26-27. Rule also could not recall whether Toombs received any mail from the BMV during that time, and she was not aware that Toombs's driver's license had been suspended. *Id*. at 27-28. She did testify that, at one point in time when their mailbox had been knocked down, the post office had held their mail and delivered it later with a note that said "box was down." *Id*. at 29, 40. Rule also testified that Toombs occasionally received mail from the BMV, but that she did not remember specific dates and did not know what was contained in the envelopes. *Id*. at 30.

[6]     At the conclusion of the trial, the trial court found Toombs guilty of Class D felony operating a vehicle as a HTV. Toombs now appeals.

# Discussion and Decision

[7] Both of Toombs's arguments challenge the sufficiency of the evidence – first, the sufficiency of the evidence proving that he was a HTV and, second, the sufficiency of the evidence of his knowledge that his driving privileges had been suspended. Toombs was charged with operating a vehicle as a HTV pursuant to Indiana Code section 9-30-10-16, which states in pertinent part:

> (a) A person who operates a motor vehicle:
>
> (1) while the person's driving privileges are validly suspended under this chapter . . . and the person knows that the person's driving privileges are suspended . . .
>
> commits a Class D felony.
>
> (b) Service by the bureau of notice of suspension or restriction of a person's driving privileges under subsection (a)(1) or (a)(2):
>
> (1) in compliance with section 5[2] of this chapter; and
>
> (2) by first class mail to the person at the last address shown for the person in the bureau's records;
>
> establishes a rebuttable presumption that the person knows that the person's driving privileges are suspended or restricted.

[8] Toombs initially argues that the trial court erred in denying his motion for involuntary dismissal of the charge against him. In particular, he contends that the State failed to present sufficient evidence in its case-in-chief to prove that he was the same Erik Toombs whose license had been suspended as a HTV. Toombs asserts that, at trial, the State did not confirm his social security

---

[2] Indiana Code section 9-30-10-5 states in relevant part that if a person's driving record makes the person a HTV, the BMV shall mail notice to the person's last known address that informs the person that his driving privileges will be suspended in thirty days because the person is a HTV.

number, birth date, driver's license number, or address to show that he was the same Erik Toombs that had his driving privileges suspended.

[9] Indiana Trial Rule 41(B) states, in pertinent part:

> **Involuntary dismissal: Effect thereof.** After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence....

The grant or denial of a motion to dismiss made under Trial Rule 41(B) is reviewed under the clearly erroneous standard. *Todd v. State*, 900 N.E.2d 776, 778 (Ind. Ct. App. 2009). In reviewing a motion for involuntary dismissal, this court will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court. *Id.* In a criminal action, a defendant's Trial Rule 41(B) motion is essentially a test of the sufficiency of the State's evidence. *Id.* (citing *Workman v. State,* 716 N.E.2d 445, 448 (Ind. 1999)). Therefore, our review of the denial of the motion for involuntary dismissal is limited to the State's evidence presented during its case-in-chief. *Id.*

[10] Under Indiana Code section 9-30-3-15,

> In a proceeding, prosecution, or hearing where the prosecuting attorney must prove that the defendant had a prior conviction for an

offense under this title, the relevant portions of a certified computer printout or electronic copy as set forth in IC 9-14-3-4 made from the records of the bureau are admissible as prima facie evidence of the prior conviction. However, the prosecuting attorney must establish that the document identifies the defendant by the defendant's driver's license number or by any other identification method utilized by the bureau.

Thus, the statute requires that a defendant be identified by his driver's license or by "any other identification method utilized by the bureau." Ind. Code § 9-30-3-15. There is no heightened requirement of identification by fingerprints or photographs required by the statute.

[11] Here, at trial, the evidence presented showed that Officer Faulk identified Toombs at trial as the driver of the vehicle she pulled over on March 13, 2014. The officer identified him on that date by name from the driver's license he provided to her, Erik Toombs. At that time, she ran the information provided to her by Toombs through the BMV and discovered that Toombs's driving record showed that his driving privileges were suspended as a HTV. Pamela Walters from the BMV testified regarding Toombs's BMV driving record and stated that the BMV provided Toombs's driving record to the State based on the identifying information given to the BMV by the State. *Tr.* at 19. She also testified that a suspension notice was sent to Toombs in his name to his address of 1920 Charles Street in Anderson. *Id.* at 14-15.

[12] We conclude that Toombs was sufficiently identified as the same Toombs whose driving privileges were suspended as a HTV. Toombs represented himself as Erik Tombs to Officer Faulk when he was pulled over for having an

expired license plate by providing her with a driver's license bearing the name of Erik Toombs, which is also the name on the BMV records produced at trial. *State's Ex.* 1. Toombs was identified through the charging information in this case as Erik Toombs, a white male with a date of birth of March 14, 1968. *Appellant's App.* at 17. The BMV records produced at trial as State's Exhibit 1 contained the name of Erik D. Toombs and identified this individual as a male with a date of birth of March 14, 1968. Additionally, the BMV records included a physical description of Toombs, which was a height of five feet, eleven inches, weight of 205 pounds, blond hair, and green eyes. *State's Ex.* 1. The trial court, as the trier of fact, was able to observe Toombs's physical characteristics in the courtroom and make a reasonable inference based on those characteristics and the characteristics listed in the BMV records to link Toombs with his driving record. Therefore, Toombs's name, gender, date of birth, and physical description were sufficient to identify him with his BMV driving records. The trial court's denial of Toombs's motion for involuntary dismissal was not clearly erroneous.

[13] Toombs next argues that the evidence presented by the State did not support his conviction because the State did not sufficiently prove that Toombs knew his driving privileges were suspended. When reviewing the sufficiency of evidence supporting a conviction, we will not reweigh the evidence or judge the credibility of witnesses. *Cruz v. State*, 980 N.E.2d 915, 918 (Ind. Ct. App. 2012). We must look to the evidence most favorable to the conviction together with all reasonable inferences to be drawn from that evidence. *Id.* We will affirm a

conviction if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[14] Toombs contends that, although the State presented evidence showing that the notice of suspension was sent by the BMV, the testimony of his fiancée, Rule, rebutted the presumption of knowledge under Indiana Code section 9-30-10-16(b). He claims that this testimony concerning the disruption of mail service due to the mailbox being knocked down frequently was sufficient to rebut the presumption of his knowledge of the suspension. Toombs further asserts that, after he rebutted the presumption, the State failed to present any more evidence to prove Toombs's knowledge of his suspension and, therefore, failed to present sufficient evidence to support his conviction.

[15] Under Indiana Code section 9-30-10-16(b), a rebuttable presumption of knowledge of suspension exists if there is evidence that notice of the suspension was served by first class mail to the person at the last known address shown for the person in the BMV's records. The evidence at trial showed that Toombs's driving privileges were suspended effective November 15, 2013, as established from his BMV record, and a notice of this suspension was mailed to Toombs's address of 1920 Charles Street in Anderson on October 16, 2013. This was Toombs's last known address in his BMV record, and Rule testified that she and Toombs had lived at the address for the past three years. *Tr.* at 23. This evidence created a rebuttable presumption that Toombs had knowledge that his driving privileges had been suspended.

[16] In order to attempt to rebut this presumption, Toombs presented the testimony of Rule that the mailbox was frequently hit and knocked down by motorists driving on their road and that this was an ongoing problem. Rule testified that, when this occurred, they would put the mailbox back up as soon as they saw that it was damaged. However, she could not testify as to whether the mailbox was down in October or November 2013. Rule also stated that, on one occasion when their mailbox was damaged, the post office held their mail and later delivered it with a note that referenced the mailbox being down. Although Rule testified that there were a few occasions where she did not receive her cellphone bill due to the damaged mailbox, she did not state that these occasions were in October or November 2013. She also testified that Toombs had occasionally received mail from the BMV, but could not remember specific dates or months.

[17] To the extent that Toombs is arguing that the trial court failed to apply this evidence to the rebuttable presumption, he is incorrect. The trial court questioned Rule extensively about the damaged mailbox and any mail disruption it may have caused, considered the testimony when making its decision, and determined that this evidence did not rebut the presumption of Toombs's knowledge. *Tr.* 32-36, 39-40, 48-49. We agree with the trial court. Toombs's evidence of disruption in mail service due to a damaged mailbox did not prove that there was a disruption in mail service in October or November 2013 such that Toombs would not have received the notice sent on October 16, 2013. Additionally, Rule's testimony showed that, even if the mailbox had

been down in October or November 2013, they put the mailbox back up as soon as they noticed it was down, there was no other evidence of other mail missing from that time period, and in the past, the post office had held their mail when the mailbox was down and delivered it at a later time. We conclude that Toombs failed to rebut the presumption that he had knowledge of his HTV status and suspension of his driving privileges, and sufficient evidence was presented to support his conviction.[3]

[18] Affirmed.

Friedlander, J., and Crone, J., concur.

---

[3] In his brief, Toombs relies on *Sabir v. Gonzales*, 421 F.3d 456 (7th Cir. 2005) in his argument. We find *Sabir* is inapplicable to this case. In that case, the issue was whether Sabir could reopen his immigration hearing after affirmatively showing that he did not receive the mailed notice of the hearing, which was returned to the immigration court marked "Attempted-Not Known." *Id*. at 458. It was not, as Toombs suggests, an issue concerning *whether* Sabir received notice. Here, there was no evidence that the notice sent by the BMV was returned to allow Toombs to affirmatively show that he did not receive the notice as Sabir was able to do. Therefore, the issue dealt with the court's ability to reopen Sabir's case, not whether the disruption in mail service was sufficient to excuse his absence from the hearing.