## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 11 2015, 9:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Tracy A. Nelson
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Wilson,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | June 11, 2015<br><br>Court of Appeals Cause No.<br>79A02-1410-PC-694<br><br>Appeal from the Tippecanoe Circuit Court<br>Cause No. 79C01-1004-PC-2<br><br>The Honorable Donald Daniel, Judge |

**Barnes, Judge.**

## Case Summary

[1] Gary Wilson appeals the denial of his petition for post-conviction relief, which challenged two of his convictions for Class B felony sexual misconduct with a minor. We affirm.

## Issue

[2] The sole issue before us is whether Wilson received ineffective assistance of trial counsel.

## Facts

[3] On July 6, 2005, fourteen-year-old D.W. told her mother that Wilson, her father, had been committing sexual acts with her. Specifically, D.W. later testified during trial that Wilson had started fondling her breasts and vagina about one year before she told her mother. The fondling progressed from initially being over her clothes to under them. D.W. further testified that, on the morning of July 6, 2005, Wilson kissed her legs and rubbed her breasts, and he then pulled aside her shorts and kissed her vagina. D.W. also testified that a few days before this incident, Wilson had kissed her legs and rubbed her breasts but had not kissed her vagina; she also stated that no other incidents similar to these had ever occurred.

[4] After D.W. reported Wilson's conduct to her mother, her mother contacted police, and Wilson agreed to a videotaped interview at the police station. During the interview, Wilson admitted that he had briefly performed oral sex on D.W. on the morning of July 6, 2005, after first kissing her legs. Wilson also

stated that he had performed similar acts on D.W., each lasting less than a minute, on two other occasions in the week and a half prior to July 6. Wilson denied ever fondling D.W.'s vagina and also stated that he had fondled her breasts once, about two weeks earlier.

[5] Later, Wilson wrote several letters to his wife and son. Several of the letters contained general apologies without going into details of what had occurred with D.W. In the final letter to his wife, Wilson provided more details of what had occurred and his thought processes:

> I was ashamed to admit I had a problem with my own lust. "Pride" kept me from asking for help or addressing the issue. . . . In my confusion of mind and my fear of all the time she was spending with boys I was afraid she would end up pregnant . . . so in some sick way I thought I'd show her another way to experience pleasure and maybe she wouldn't let boys jump on her the other way. . . . If [D.W.]'ll admit that she tried to hide the truth by saying I came to her room and fondled her breast "which never happened once" I was at work I'll prove that. I only admitted to putting my face in her private area once and pressing in with my nose and mouth, that she wasn't unclothed and it was only a couple of seconds. The other 2 times I just admitted to kissing her legs and moving up slightly. Which was normal for as you know I always kissed them both all over and it was never perverted, but that last time the Medication, my state of trauma (you know my mind was broke. Jekll & Hide [sic]") Lust and perversion" Immorality did get me.

Ex. 12, 13.[1] Wilson also stated to his wife:

> Get rid of these more serious charges. I can beat her at a jury if you don't talk or agree on the extent of the seriousness of these incidents

---

[1] Exhibit 12 was the original handwritten letter, while Exhibit 13 was a photocopy of the letter.

that it had just happened it hadn't been going on for some time and hadn't escalated to any penetration or sexually deviant crime.

*Id.*

[6] The State filed a thirteen-count information against Wilson, charging him with four counts of Class B felony incest, four counts of Class B felony sexual misconduct with a minor, and five counts of Class C felony sexual misconduct with a minor. At Wilson's jury trial, the State introduced without objection his videotaped police interview. Additionally, the State introduced without objection the letters Wilson had written to his wife and son. The jury found Wilson guilty of three counts of incest, three counts of Class B felony sexual misconduct with a minor, and two counts of Class C felony sexual misconduct with a minor. The trial court merged the incest convictions with the three Class B felony sexual misconduct with a minor convictions. These convictions were related to Wilson having performed oral sex on D.W. The trial court sentenced Wilson to a total term of sixty years. On direct appeal, we rejected Wilson's claim of a violation of Indiana Trial Rule 4(C) and found that his sentence was not inappropriate. *Wilson v. State*, No. 79A05-0807-CR-429 (Ind. Ct. App. May 4, 2009), *trans. denied*.

[7] Wilson subsequently filed a PCR petition, alleging that he had received ineffective assistance of trial counsel. Specifically, Wilson asserted that trial counsel should have objected to introduction of his videotaped statement and his letters to his wife and son because there was insufficient corpus delicti evidence, independent of his confession, that he committed three acts of Class B

felony sexual misconduct with a minor via oral sex as opposed to just one act, as testified to by D.W. at trial. Wilson did not attempt to present any evidence from his trial attorney, by testimony or affidavit. On this claim, Wilson only sought to set aside two of his Class B felony sexual misconduct with a minor convictions. The post-conviction court rejected Wilson's argument and denied his PCR petition.[2] In part, the post-conviction court held that Wilson's letters to his wife and son helped provide corroborating evidence for D.W.'s testimony that provided a sufficient corpus delicti to allow admission of his videotaped statement. However, the post-conviction court failed to address Wilson's contention that the letters themselves could not provide corroborating evidence of D.W.'s testimony because they also were out-of-court admissions, just like the videotaped statement. Wilson now appeals.

## Analysis

[8] A post-conviction relief petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013) (citing Ind. Post–Conviction Rule 1(5)). A petitioner appealing the denial of post-conviction relief is appealing from a negative judgment. *Id.* "To prevail from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion

---

[2] Wilson also argued that appellate counsel was ineffective for not arguing that his crimes were subject to consecutive sentencing limitations. The post-conviction court also rejected this claim, and Wilson does not raise it on appeal.

opposite that reached by the post-conviction court." *Id.* Additionally, Indiana Post–Conviction Rule 1(6) requires a post-conviction court to enter findings of fact and conclusions of law. We do not defer to any legal conclusions made by the post-conviction court, but we will reverse its findings and judgment only when there has been clear error—"'that which leaves us with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*).

[9] A petitioner claiming to have received ineffective assistance of trial counsel in violation of the Sixth Amendment must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). *Id.* First, a petitioner must show that counsel's performance was deficient. *Id.* "This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* This requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, meaning a trial whose result is reliable. *Id.* In order to establish prejudice, it must be shown that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* "We afford counsel considerable discretion in choosing strategy and tactics, and '[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render

representation ineffective.'" *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012) (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*). If a claim of ineffective assistance is based upon a failure to object to evidence, "a defendant must prove that an objection would have been sustained, that the failure to object was unreasonable, and that he was prejudiced." *Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997).

[10]  Our supreme court has discussed Indiana's corpus delicti rule as follows:

> In Indiana, a crime may not be proven based solely on a confession, and admission of a confession requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct. However, this evidence need not prove that a crime was committed beyond a reasonable doubt, but merely "provide an inference that a crime was committed." Finally, this inference of a crime may be established by circumstantial evidence.

*Workman v. State*, 716 N.E.2d 445, 447-48 (Ind. 1999) (citations omitted). In 1990, our supreme court considered arguments for rejecting the corpus delicti rule but ultimately declined to do so:

> The corpus delicti rule arose from judicial hesitancy to accept without adequate corroboration a defendant's out-of-court confession of criminal activity. The primary function of the rule is to reduce the risk of convicting a defendant based on his confession for a crime that did not occur. Other justifications include the reduction of confessions produced by coercive tactics and the encouragement of thorough police investigations. The extent to which the rule actually furthers these goals has been seriously questioned, especially in light of developing procedural safeguards for voluntary confessions.

*Willoughby v. State*, 552 N.E.2d 462, 466 (Ind. 1990) (citations omitted).

Ultimately, the court in *Willoughby* held:

> We are persuaded that where a defendant confesses to several crimes of varying severity within a single criminal episode, strict and separate application of the corpus delicti rule to each offense adds little to the ultimate reliability of the confession once independent evidence of the principal crimes is introduced. The confession at that point has been substantially corroborated. In such a case the confession stands as direct evidence of each crime, even those not separately corroborated, if the independent evidence establishes the corpus delicti of the principal crime or crimes.

*Id.* at 467.

[11]   In *Workman*, the court further elaborated on what the phrase "single criminal episode" means within the context of the corpus delicti rule. It looked to decisions from this court defining "criminal episode" in the context of statutory consecutive sentencing limitations. *Workman*, 716 N.E.2d at 448. Specifically, the court stated, "'[E]pisode means an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.'" *Id.* (quoting *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995)). "Indiana Code § 35-50-1-2(b) defines an episode of criminal conduct as 'a connected series of offenses that are closely related in time, place, and circumstance.'" *Id.* In *Workman*, the court held that the defendant's abuse of his wife's corpse several hours after he had murdered her was part of the same "criminal episode" as the murder for which there was ample independent evidence, and so the defendant's confession for also abusing the corpse was admissible. *Id.*

[12]   Here, the post-conviction court specifically found that three different acts of oral sex upon D.W. by Wilson on three separate days would not have constituted a

"single criminal episode." Regardless, it found that there was sufficient corroborative evidence of three different such acts, despite D.W.'s testimony that there was only one act. In large part, however, the post-conviction court relied upon the letters from Wilson to his wife and son, especially the last letter he wrote. Wilson specifically challenged the admission of these letters on corpus delicti grounds as well, but the post-conviction court did not address that challenge.

[13] It is unclear whether the corpus delicti rule is intended to apply to any out-of-court statements made by a defendant, as opposed to only statements made during police interrogations. Wilson has not cited any cases where the rule was applied to statements made outside of a police interrogation. And, one of the central purposes of the rule is reduce "confessions produced by coercive tactics and the encouragement of thorough police investigations." *Willoughby*, 552 N.E.2d at 466. That purpose does not apply to voluntary statements made by a defendant to third parties who are not law enforcement officers. On the other hand, the rule has not been explicitly limited only to police interrogation "confessions" and has been said to apply to "admissions" as well. *See, e.g.*, *Green v. State*, 159 Ind. App. 68, 79, 304 N.E.2d 845, 851-52 (1973) (referring to corpus delicti rule and application to "an admission or confession"). "'An admission differs from a confession in that a confession acknowledges all of the essential elements of the crime.'" *Flanders v. State*, 609 S.E.2d 346, 350 (Ga. 2005) (quoting *Walsh v. State*, 499 S.E.2d 332, 335 (Ga. 1998)). We conclude that, given the lack of a definitive holding that admissions by a defendant to

another person outside the context of a police interview are covered by the corpus delicti rule, we cannot say trial counsel was ineffective for not objecting to introduction of Wilson's letters as violating that rule.

[14] In any event, even if both the letters and Wilson's videotaped statement were covered by the corpus delicti rule, we believe trial counsel was not ineffective for failing to object to either the letters or the videotaped statement. D.W. testified that Wilson molested her over the course of about a year. She described the acts as progressing from fondling her breasts and vagina over her clothes, to fondling under her clothes, to kissing her legs but not her vagina, and finally to an instance where Wilson briefly performed oral sex on her. Even though D.W. only recalled one instance of oral sex, she described a pattern of escalating molestation over the course of a year culminating in oral sex. Thus, there is evidence of D.W. being subjected to repeated sexual acts by Wilson. Even if her testimony did not establish all the elements for three counts of Class B felony sexual misconduct with a minor, it did not have to do so in order for Wilson's extrajudicial statements to be admissible. Wilson's videotaped statement and letters also describe several sexual acts and, although Wilson's statements are not perfectly consistent with D.W.'s testimony, there is significant overlap. In other words, D.W.'s testimony sufficiently corroborates Wilson's out-of-court statements.

[15] Wilson nonetheless contends that, because the other two alleged acts of oral sex with D.W. as related in his videotaped statement occurred on other days than the act to which D.W. testified, they cannot be considered part of the same

"criminal episode" and so Wilson's confession to those other two acts are inadmissible, per the holding in *Workman*. We agree that, in strictly applying the sentencing definition of a "single criminal episode," the three alleged acts of oral sex did not constitute such an episode, as found by the post-conviction court and essentially conceded by the State on appeal. *See Smith v. State*, 770 N.E.2d 290, 294 (Ind. 2002) (holding defendant's six cashing of checks stolen from two victims at different times and at different locations were not a single episode of criminal conduct because "they were not 'simultaneous' and 'contemporaneous' with one another") (quoting *Tedlock*, 656 N.E.2d at 276). However, it is not perfectly clear that *Workman* was intended to create a bright-line rule whereby a series of crimes falling outside the sentencing definition of "single criminal episode" was governed by the corpus delicti rule while only those series of crimes falling within it were exempt from the rule. Rather, we believe *Willoughby* and *Workman* can be read together as indicating that flexibility should be applied in considering whether the corpus delicti rule has been satisfied so as to allow admission of a defendant's extrajudicial admissions and confessions. *Workman* looked to the sentencing definition of "single criminal episode" for guidance, but it did not state that such definition was binding in all cases in which a corpus delicti issue is raised.

[16] Especially within the context of an ineffective assistance of counsel claim, it would have been within the broad realm of judgment entrusted to an attorney to conclude that the corpus delicti rule would not prohibit introduction of

Wilson's videotaped statement and letters.[3] It appears that the purposes of the corpus delicti rule were satisfied by D.W.'s testimony: to establish by evidence independent of Wilson's out-of-court statements that multiple sex crimes against her had in fact occurred, and that those statements were not the result of coercion. As such, we cannot say it was unreasonable for trial counsel not to object to introduction of Wilson's videotaped statement and letters. Wilson did not meet his burden of establishing that he received ineffective assistance of trial counsel.

## Conclusion

[17] The post-conviction court did not clearly err in concluding that Wilson did not receive ineffective assistance of trial counsel. We affirm the denial of Wilson's PCR petition.

[18] Affirmed.

Riley, J., and Bailey, J., concur.

---

[3] Wilson failed to obtain either trial counsel's presence at the post-conviction hearing or an affidavit from counsel, and so we know nothing of his thought processes with respect to this issue.