# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2017, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan Tuggle, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 21, 2017 <br><br> Court of Appeals Case No. 49A02-1706-CR-1372 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Stanley Kroh, Magistrate <br><br> Trial Court Cause No. 49G03-1702-F1-7695 |

**Bailey, Judge.**

# Case Summary

[1] Bryan Tuggle ("Tuggle") appeals his conviction for Attempted Murder, a Level 1 felony.[1]  We affirm.

# Issues

[2] Tuggle presents two issues for review:

> I.    Whether the State failed to present sufficient evidence to withstand Tuggle's motion for involuntary dismissal and to support his conviction; and

> II.   Whether the habitual offender adjudication was erroneously treated as a separate conviction necessitating remand for correction of the sentencing order.

# Facts and Procedural History

[3] During February of 2017, Larhonda Myers ("Myers"), Daron Gary ("Gary"), Shontrell Gary ("Shontrell"), and Tuggle worked together at an Indianapolis fast-food restaurant.  Tuggle was dating Shontrell and lived with her and Gary.  Gary sometimes provided transportation to work for Myers, and had agreed to do so late in the evening of February 22, 2017.  Myers, who had received an

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1.

income tax refund, had agreed to loan Gary $200.00. She told Gary that he could have the money when he picked her up for work.

[4] When Gary arrived to pick up Myers, Shontrell and Tuggle were in the vehicle. Gary indicated that he was dropping them off at home before taking Myers to work and helping her close the restaurant. Shontrell and Myers began to argue at some point during the drive, and Myers overheard Tuggle whisper to Shontrell, "just leave it alone. It's going to be took [sic] care of." (Tr. at 70.)

[5] Once the group arrived at the house, everyone except Myers exited the vehicle. Gary spoke with Tuggle outside the vehicle; Gary then entered the back seat and appeared to be looking for something. Myers offered to help. Instead of answering her, Gary pulled Myers into the back seat and began to beat her. Gary struck Myers with his fists approximately twenty times and strangled her until she briefly lost consciousness.

[6] As Myers regained consciousness, she was aware that Tuggle and Gary were trying to throw her out of the vehicle. Myers attempted to exit the vehicle on her own but felt a stabbing pain in her side. She heard Gary tell Tuggle "get that bitch." (Tr. at 56.) Tuggle responded by jumping in front of Myers and stabbing her in the chest. Tuggle also slashed Myers' neck before she escaped and began to run.

[7] Myers knocked at the doors of some neighbors but got no response. Eventually, she collapsed in a chair on a neighbor's porch. The neighbor discovered Myers covered in blood and called 9-1-1.

[8] Myers identified Gary and Tuggle as her attackers. Tuggle was charged with Attempted Murder and Aggravated Battery. The State also alleged him to be a habitual offender.

[9] On June 9, 2017, Tuggle was tried in a bench trial and found guilty of the charges against him. He admitted his status as a habitual offender. At the sentencing hearing, the trial court vacated the Aggravated Battery conviction and sentenced Tuggle to thirty-five years imprisonment on the Attempted Murder conviction. The sentence was enhanced by fifteen years due to Tuggle's status as a habitual offender. This appeal ensued.

# Discussion and Decision

## Evidentiary Support for Conviction

[10] At the close of the State's case-in-chief, Tuggle made a motion for involuntary dismissal pursuant to Indiana Trial Rule 41(B), which provides in relevant part:

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Tuggle argues that the trial court erroneously denied his motion because the State failed to establish his participation in the stabbing. More specifically, he claims that Myers initially implicated only Gary and that she had difficulty making an out-of-court identification of Tuggle when presented with a photographic line-up. But these contentions, even if true, seek to invoke a reweighing of evidence and thus do not comport with our standard of review.

A motion for an involuntary dismissal in a bench trial "is essentially a test of the sufficiency of the State's evidence." *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999). The trial court weighs the evidence and determines the credibility of the witnesses. *Id.* The motion should be granted if the State fails to prove the essential elements of the offense beyond a reasonable doubt. *Id.* We review the trial court's decision for clear error. *Todd v. State*, 900 N.E.2d 776, 778 (Ind. Ct. App. 2009). We do not reweigh the evidence or judge the credibility of the witnesses. *Id.* Reversal for clear error is appropriate only when the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. *Id.*

To convict Tuggle of Attempted Murder, as charged, the State was required to prove beyond a reasonable doubt that Tuggle knowingly or intentionally stabbed Myers with the specific intent to kill her, which constituted a substantial step toward the commission of Murder. I.C. §§ 35-42-1-1, 35-41-5-1; App. at 33. Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime, and the trier of fact may infer intent to

kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002).

[14] At Tuggle's trial, the State presented evidence that Myers had been stabbed ten to fourteen times. Also, her throat had been slashed. Myers testified that Tuggle had inflicted at least some of those wounds; she stated that she had "no doubt." (Tr. at 57.)

[15] Indianapolis Metropolitan Police Detective Keith Albert ("Detective Albert") testified that Tuggle's blood had been found in Gary's vehicle and that Tuggle had a fresh-looking cut on his hand when he was arrested one day after Myers had been stabbed. Detective Albert also contradicted Tuggle's claim that Myers had struggled to identify him. Detective Albert testified that he showed Myers a photographic line-up, Myers immediately placed her finger on Tuggle's photograph, and she stated, "that's the asshole who stabbed me." (Tr. at 102.) As such, the State did not fail to prove an essential element of the charge and the trial court did not clearly err in denying the motion for involuntary dismissal.

[16] A motion for involuntary dismissal addresses the evidence presented in the State's case-in-chief. According to Tuggle, his defense "provided greater support for his innocence" and thus a review of the totality of the evidence is warranted under our sufficiency of the evidence standard. Appellant's Brief at 16. Looking to the evidence and reasonable inferences supporting the conviction, without reweighing the evidence or judging the credibility of

witnesses, we will affirm the conviction "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[17] Myers testified that Tuggle stabbed her in the chest and sliced her throat. Tuggle's emphasis upon his testimony that Gary was the sole perpetrator merely presents a request to reweigh the evidence. Sufficient evidence supports Tuggle's conviction for Attempted Murder.

## Habitual Offender Sentencing Enhancement

[18] Tuggle contends that the trial court improperly treated the habitual offender sentencing enhancement as a separate criminal conviction. The habitual offender statute does not set forth an independent offense; rather "habitual offender" is a status that results in an enhanced sentence. I.C. § 35-50-2-8; *Maul v. State*, 467 N.E.2d 1197, 1199 (Ind. 1984). Because the status adjudication is not a separate crime and does not result in a separate sentence, when the trial court has imposed a separate sentence, the case must be remanded for correction of the sentencing order. *Id.*

[19] In *Maul*, the sentencing order provided that the defendant was sentenced on Count I to a term of years and further provided that he was also sentenced on "Count II, Class Habitual Offender, 30 years stated term, 30 years executed." 467 N.E.2d at 1199. On appeal, the Court remanded the case to the trial court

for the entry of a proper sentencing order "with the enhancement on the underlying felony." *Id.*

[20] Here, by contrast, the sentencing order and Abstract of Judgment show that the thirty-five year sentence imposed for Count I, Attempted Murder, was enhanced by fifteen years due to Tuggle's status as a habitual offender. There is no separate sentence imposed upon Tuggle relative to Count III, Habitual Offender.[2] Thus, there is no necessity for a remand of the case to correct the sentence imposed.

## Conclusion

[21] The trial court did not commit clear error in denying Tuggle's motion for an involuntary dismissal. Sufficient evidence supports Tuggle's conviction. He was properly sentenced to a single term of imprisonment for Attempted Murder.

[22] Affirmed.

Kirsch, J., and Pyle, J., concur.

---

[2] The Sentencing Order and Abstract of Judgment indicate that the disposition of Count III was "Conviction Merged." App. at 19, 21. This is an inaccurate reference as there was no separate conviction; however, Tuggle has properly been ordered to serve a single, enhanced sentence of fifty years.