## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2018, 9:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shavaun Ingram,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2018

Court of Appeals Case No.
18A-CR-217

Appeal from the Marion Superior Court

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G19-1707-CM-25837

**Pyle, Judge.**

# Statement of the Case

[1] Shavaun Ingram ("Ingram") appeals her conviction for Class A misdemeanor theft, which was charged based on her failure to pay cab fare. Ingram argues that the trial court erred by: (1) denying her Indiana Trial Rule 41(B) motion for involuntary dismissal; and (2) ordering her to pay $10.00 in restitution to the cab driver. Because Ingram presented evidence after the trial court denied her Trial Rule 41(B) motion, we treat her first argument as a challenge to the sufficiency of the evidence and affirm her conviction as the evidence is sufficient to support her theft conviction. Additionally, because Ingram specifically agreed to the State's request to pay restitution of $10.00 to the cab driver, she invited any alleged error with the restitution order and has waived her appellate challenge to restitution.

[2] We affirm.

# Issues

1. Whether sufficient evidence supports Ingram's conviction.

2. Whether Ingram has waived her challenge to the restitution order.

# Facts

[3] On July 13, 2017, Ingram, who worked at a CVS store in Indianapolis, called Gold Cab to get a ride to work. The cab rate was $3.50 for a pick up and $2.00 per mile. Gold Cab driver, Teklemichael Peklai ("Peklai"), picked up Ingram at her home and drove her to the CVS store. Without saying a word and

without paying, Ingram got out of the cab and walked into the CVS. After waiting outside for about ten minutes, Peklai went inside the store to find Ingram. She came out from the back of the store and stood behind the register. Peklai talked to Ingram, and she spoke to him "aggressively" and did not pay the cab fare. (Tr. Vol. 2 at 6).

[4] Thereafter, Indianapolis Metropolitan Police Department Officer Tracy Ryan ("Officer Ryan") was dispatched to the CVS on a report of "a failure to pay." (Tr. Vol. 2 at 10). Officer Ryan spoke to Ingram and told her that Peklai was waiting for his payment. Ingram told the officer that she was not going to pay Peklai. Ingram also stated that Peklai had "picked her up late[] from her house so she didn't think that she needed to pay him." (Tr. Vol. 2 at 11). Officer Ryan told Ingram that she was committing a crime if she did not pay the cab fare. Ingram argued with Officer Ryan about the payment and said that the officer was "fucked up" and was "treating her unfairly." (Tr. Vol. 2 at 12). Ingram eventually went outside to find out how much she owed to Peklai, who had been waiting in his cab.[1] Ingram owed a little more than $10.00 for her cab fare, and she told Officer Ryan that she did not have money to pay it. Officer Ryan allowed Ingram to make some phone calls in an attempt to get money to pay the fare, but her calls were unanswered. Ingram told the officer that she was not going to pay the fare and to just take her to jail.

---

[1] There was apparently an increase to her original cab fare because of the corresponding fee for the delay in paying Peklai.

[5] The State charged Ingram with Class A misdemeanor theft. Specifically, the State alleged that Ingram had "knowingly exert[ed] unauthorized control over the property or service of Gold Cab LLC, to-wit: transportation and/or cab fare with the intent to deprive Gold Cab LLC of any part of the use or value of the property[.]" (App. Vol. 2 at 11).

[6] The trial court held a bench trial in November 2017. The State called Peklai and Officer Ryan as witnesses, and they testified to the facts above. After the State rested its case, Ingram moved for an involuntary dismissal pursuant to Trial Rule 41. The trial court denied the motion. Ingram then testified on her own behalf and stated that she had intended to pay her cab fare but that her money had fallen out of her pocket. She also testified that she had told Officer Ryan that she had lost her money. The State called Officer Ryan as witness on rebuttal, and Officer Ryan testified that Ingram had never informed the officer that she had lost her money. The trial court found Ingram guilty as charged.

[7] During the subsequent sentencing hearing, the State requested that Ingram pay restitution of $10.75 "to the cab driver" and that she be required to do eighty hours of community service. (Tr. Vol. 2 at 19). Ingram's counsel stated that Ingram "ha[d] no issue paying ten dollars in restitution" and that "[t]he restitution alone [wa]s appropriate in this case." (Tr. Vol. 2 at 19). The trial court imposed a 365-day sentence with 357 days suspended. Additionally, the trial court ordered her to pay $10.00 in restitution to Peklai and to perform forty hours of community service. After receiving permission to file a belated notice of appeal, Ingram now appeals.

# Decision

## 1. Sufficiency of Evidence

[8] Ingram first argues that the trial court erred by denying her Indiana Trial Rule 41(B) motion for involuntary dismissal. The State asserts we should treat Ingram's argument as a challenge to the sufficiency of the evidence because she presented evidence on her own behalf after the trial court denied her motion. We agree with the State.

[9] Our Court has held that "[a]ny error made in not granting a motion for involuntary dismissal . . . is waived by the movant's subsequent presentation of evidence[,]" and we further explained that, rather than completely waiving the argument, our Court would view the argument as one challenging the sufficiency of the evidence. *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 985 & 985 n.7 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. Furthermore, our Indiana Supreme Court has explained that a defendant's challenge to a Trial Rule 50(A) motion for judgment on the evidence or motion for directed verdict, which is the motion equivalent to a Trial Rule 41(B) motion but is filed during a jury trial, should be treated as challenge to the sufficiency of the evidence because the defendant had presented evidence after the denial of his motion. *See Farris v. State*, 753 N.E.2d 641, 647 (Ind. 2001) (treating the defendant's challenge to the denial of his Trial Rule 50(A) motion for directed verdict as a challenge to the sufficiency of the evidence because the defendant had presented evidence after the denial of his motion). *See also Gray v. State*, 957 N.E.2d 171,

176 (Ind. 2011) (explaining that the "hornbook law of Indiana Trial Rule 50(A). . . holds that a party waives any error of the trial court's in denying a motion for judgment on the evidence whenever the party subsequently presents her own evidence"). Thus, we will review Ingram's argument as a challenge to the sufficiency of the evidence.[2]

[10] Our standard of review for a sufficiency of the evidence claim is well-settled.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). "In essence, we assess only

---

[2] We acknowledge that our appellate courts have previously addressed a defendant's Trial Rule 41(B) argument even where the defendant had subsequently presented evidence following the denial of the argument. *See Workman v. State*, 716 N.E.2d 445 (Ind. 1999); *Todd v. State*, 900 N.E.2d 776 (Ind. Ct. App. 2009). In those cases, however, there was no specific challenge to the effect of the defendant's act of presenting evidence following the denial of his Trial Rule 41(B) motion. Moreover, even if we were to review Ingram's argument under Trial Rule 41(B), we would still affirm the trial court's decision.

whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[11] The theft statute, INDIANA CODE § 35-43-4-2, provides that "[a] person who knowingly or intentionally exerts unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use[.]" I.C. § 35-43-4-2(a). To convict Ingram of Class A misdemeanor theft as charged, the State was required to prove beyond a reasonable doubt that Ingram knowingly exerted unauthorized control over Gold Cab's property, i.e. transportation and/or cab fare, with intent to deprive Gold Cab of any part of the property's use or value. Intent may be established by circumstantial evidence and inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Long v. State*, 935 N.E.2d 194, 197 (Ind. Ct. App. 2010), *trans. denied*.

[12] Ingram challenges only one element of her theft conviction. She admits that she exercised control over Gold Cab's property, but she asserts that the evidence fails to show that her control was unauthorized. She also contends that her failure to pay the cab fare was not criminal and that it, instead, merely equated to a civil contract dispute in which she admittedly "breached the terms of her contract with Gold Cab." (Ingram's Br. 11).

[13] We recognize that "[t]he legislature did not intend to criminalize bona fide contract disputes." *Long*, 935 N.E.2d at 197. However, where the evidence

shows that a defendant has exerted unauthorized control over another's property, then "a criminal conviction may stand." *Id.* (affirming a defendant's theft conviction and holding that the defendant's control over property was unauthorized under INDIANA CODE § 35-43-4-1(b)(6) where the evidence supported a reasonable inference that, at the inception of a contract, the defendant had no intention of honoring the contract). In relation to the theft statute, a person's control over property of another person is considered "unauthorized" if it is exerted, among other ways, "without the other person's consent;" "by creating or confirming a false impression in the other person;" or "by promising performance that the person knows will not be performed[.]" I.C. §§ 35-43-4-1(b)(1), (b)(4), & (b)(6).[3]

[14]  Here, the evidence at the bench trial showed that, even though Ingram did not have money to cover a $10.00 cab fare, she called Gold Cab for a ride to work, got into Peklai's cab, and got out without paying him. Thus, the trial court, as trier of fact, could have reasonably inferred that Ingram created a present false impression that she was a paying customer or had money to pay for the transportation[4] or, alternatively, that she had made a promise to pay the cab

---

[3] The State is required to prove that the defendant exerted "unauthorized" control in only one of the ways set forth in this subsection (b) of INDIANA CODE § 35-43-4-1. *See Costello*, 643 N.E.2d at 423 n.6. "When proof is made under one of the subparagraphs of [INDIANA CODE] § 35-43-4-1(b), proof under the others is mere surplusage." *Id.*

[4] We recognize that a false impression or "misrepresentation as to future acts or events . . . will not support a conviction for theft." *Costello v. State*, 643 N.E.2d 421, 423 n.5 (Ind. Ct. App. 1994) (citing *Coburn v. State*, 461 N.E.2d 1154, 1156 (Ind. Ct. App. 1984)). Here, however, Ingram created a false impression that she was a paying customer when she called the cab company and entered the cab.

fare and secured the transportation knowing that she would not pay. Her suggestion that she had the money for cab fare but lost it is merely a request to reweigh the evidence and witness credibility, which we will not do. *See Drane*, 867 N.E.2d at 146. Additionally, the evidence showed that Peklai picked up Ingram at her house, drove her to CVS, tried unsuccessfully to obtain payment from Ingram, and then called the police to report Ingram's failure to pay the cab fare. While Peklai agreed to provide Ingram with a cab ride, he did not agree to allow her to withhold the payment or cab fare for that ride. Thus, the trial court could have reasonably inferred that Ingram kept the cab fare without his consent. Because there is sufficient evidence from which the trial court could have determined that Ingram's exerted unauthorized control over the transportation or cab fare, we affirm her theft conviction.

## 2. Restitution

[15] Lastly, Ingram argues that the trial court erred by ordering her to pay $10.00 in restitution to the cab driver, Peklai. Specifically, she contends that Peklai was not the victim of her crime because his name was not specifically mentioned in the charging information and because the cab company should have paid him if he were an hourly employee. [5]

---

[5] Ingram acknowledges that she did not object to restitution during sentencing. Generally, the failure to object to an award of restitution will result in waiver of an appellate challenge to the award; however, we note that our Court has "emphasized this Court's preference for reviewing a trial court's restitution order even absent an objection by the defendant." *See C.H. v. State*, 15 N.E.3d 1086, 1095-97 (Ind. Ct. App. 2014).

[16] An order of restitution lies within the trial court's discretion and will be reversed only where there has been an abuse of discretion. *Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *Gil v. State*, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013). "The principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused." *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008), *reh'g denied*. "Restitution also serves to compensate the offender's victim." *Id.*

[17] Pursuant to the restitution statute, INDIANA CODE § 35-50-5-3, a trial court has authority to "order [a defendant] to make restitution to the *victim of the crime*[.]" IND. CODE § 35-50-5-3(a) (emphasis added). The trial court "shall base its restitution order upon a consideration of . . . [among other things,] . . . earnings lost by the victim (before the date of sentencing) as a result of the crime[.]" I.C. § 35-50-5-3(a)(4). "Although the [restitution] statute does not define the term 'victim,' [the Indiana Supreme] Court has held that restitution is properly payable to 'those shown to have suffered injury, harm or loss as a direct and immediate result of the criminal acts of a defendant.'" *Sickels v. State*, 982 N.E.2d 1010, 1013 (Ind. 2013) (quoting *Reinbold v. State*, 555 N.E.2d 463, 470 (Ind. 1990), *overruled in part on other grounds by Wright v. State*, 658 N.E.2d 563 (Ind. 1995)).

[18] Here, during the sentencing hearing, the State requested that Ingram pay restitution of $10.00 "to the cab driver" and that she be required to do eighty

hours of community service. (Tr. Vol. 2 at 19). Ingram's counsel stated that Ingram "ha[d] no issue paying ten dollars in restitution" and that "[t]he restitution alone [wa]s appropriate in this case." (Tr. Vol. 2 at 19). The trial court then ordered Ingram to pay $10.00 in restitution to Peklai.

[19] Despite her agreement regarding restitution to Peklai, Ingram now attempts to argue on appeal that the trial court's restitution order was erroneous. We reject her argument because of invited error. A defendant "cannot invite error and then request relief on appeal based upon that ground[.]" *Mitchell v. State*, 730 N.E.2d 197, 201 (Ind. Ct. App. 2000), *trans. denied*. Invited error is not reversible error. *C.H. v. State*, 15 N.E.3d 1086, 1097 (Ind. Ct. App. 2014), *trans. denied*. Because Ingram agreed to the amount of restitution, she invited any alleged error and waived her challenge to the trial court's $10.00 restitution order. *See, e.g.*, *id.* (holding that the appellant's restitution argument was waived where he had invited any error regarding restitution); *Mitchell*, 730 N.E.2d at 201 (providing that the defendant had waived his appellate challenge to the trial court's restitution order because he had invited the error alleged). Accordingly, we affirm the trial court's restitution order requiring Ingram to pay $10.00 in restitution to Peklai.

[20] Affirmed.

Najam, J., and Crone, J., concur.