

FILED
Aug 18 2020, 2:03 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-CR-340

## Jordan B. Wadle,
*Appellant (Defendant),*

—v—

## State of Indiana,
*Appellee (Plaintiff).*

Argued: September 5, 2019 | Decided: August 18, 2020

Appeal from the Fayette Superior Court,
No. 21D01-1511-F3-912
The Honorable J. Steven Cox, Special Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-CR-1465

**Opinion by Justice Goff**

Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

Historically, the prohibition against double jeopardy applied as a procedural bar to a subsequent prosecution for the same offense, whether after acquittal or conviction. Over time, the protection evolved beyond the procedural context to embody a substantive bar to multiple convictions or punishments for the same offense in a single trial. Today, courts often treat these two strands of double jeopardy alike, applying the same analysis regardless of context. The historical record reveals our own vacillation on the issue.[1] But just over two decades ago, this Court, in *Richardson v. State*, resolved any lingering doubt by treating both strands with equal reverence under the Indiana Constitution.

In settling this issue, the *Richardson* Court adopted a comprehensive analytical framework—consisting of a "statutory elements" test and an "actual evidence" test—for deciding all substantive double-jeopardy claims under article 1, section 14. Subsequent application of these tests, however, proved largely untenable, ultimately forcing the Court to retreat from its all-inclusive analytical framework. What we're left with today is a patchwork of conflicting precedent and inconsistent standards, ultimately depriving the Indiana bench and bar of proper guidance in this area of the law.

To be sure, we commend our predecessors on the *Richardson* Court for their exhaustive survey, insightful analyses, and critical commentaries on the nuances of double-jeopardy law in Indiana (and beyond). At its very core, *Richardson* is a true work of legal scholarship. But when our case law evolves in unexpected and contradictory ways, we would be remiss in preserving the status quo.

---

[1] *Compare Thompson v. State*, 259 Ind. 587, 591–92, 290 N.E.2d 724, 726 (1972) ("Since Appellant has been subjected to **only one judicial proceeding** for the offenses charged, his claim of double jeopardy is inappropriate."), *with Elmore v. State*, 269 Ind. 532, 534, 382 N.E.2d 893, 894 (1978) (concluding that "a defendant may not be reprosecuted in a second trial for the **same offense** nor may he be twice sentenced for the **same offense** in a single proceeding").

To that end, we expressly overrule the *Richardson* constitutional tests in resolving claims of substantive double jeopardy. Going forward, and with a focus on statutory interpretation, we adopt an analytical framework that applies the statutory rules of double jeopardy. *See infra* Section I.B.3. This framework, which applies when a defendant's single act or transaction implicates **multiple** criminal statutes (rather than a single statute), consists of a two-part inquiry: First, a court must determine, under our included-offense statutes, whether one charged offense encompasses another charged offense. Second, a court must look at the underlying facts—as alleged in the information and as adduced at trial—to determine whether the charged offenses are the "same." If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, "included" in the other. But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the presumption is that the legislation intends for alternative (rather than cumulative) sanctions. The State can rebut this presumption only by showing that the statute—either in express terms or by unmistakable implication—clearly permits multiple punishment.

The defendant here stands convicted of several offenses for leaving the scene of an accident after twice striking and seriously injuring his victim while driving drunk. Because we interpret the statutory offenses charged as alternative sanctions, we hold that the defendant's multiple convictions violate the statutory rules of substantive double jeopardy. Accordingly, we affirm in part, reverse in part, and remand with instructions for the trial court to vacate all but one of his convictions: Level 3 felony leaving the scene of an accident. And because this conviction alone justifies the penalty imposed, we further instruct the trial court to leave in place his sixteen-year sentence with two years suspended to probation.

## Facts and Procedural History

Jordan Wadle went out drinking with some friends one night at a local bar in Connersville, Indiana. At some point that evening, Wadle apparently made unsolicited sexual advances toward a woman. The woman's husband and his brother, Charles Woodward, later confronted

Wadle over the incident in the parking lot. Although physically unprovoked by his interrogators, Wadle went on the offensive, punching and kicking Woodward. Wadle then returned to his car, suggesting an end to the fracas. But as Woodward retreated, Wadle's car struck him from behind. Hell-bent on causing further injury, Wadle struck Woodward a second time, pinning him under a guardrail adjacent to the bar. Wadle then sped away, leaving his broken victim behind. Police caught up with the suspected malefactor about an hour later just outside of town. Testing later revealed Wadle had a blood-alcohol level nearly twice the legal limit. Woodward ultimately survived the attack but spent nearly sixty days in the intensive care unit, having underwent surgery for a fractured skull and multiple broken ribs.

The State charged Wadle with multiple offenses:

| | |
|---|---|
| Count I | Level-3 felony aggravated battery; |
| Count II | Leaving the scene of an accident, elevated from a Class B misdemeanor to a Level 3 felony for his offense of OWI causing serious bodily injury (**OWI-SBI**); |
| Count III | OWI-SBI, elevated from a Level 6 to a Level 5 felony due to a previous OWI conviction; |
| Count IV | OWI endangering a person, elevated from a Class A misdemeanor to a Level 6 felony due to a previous OWI conviction; and |
| Count V | OWI with a blood-alcohol concentration of 0.08 or more, elevated from a Class C misdemeanor to a Level 6 felony due to a previous OWI conviction. |

*See* I.C. § 35-42-2-1.5 (aggravated battery) (2014 Repl.); I.C. § 9-26-1-1.1(a), (b) (Supp. 2015) (leaving the scene); I.C. § 9-30-5-4(a) (OWI-SBI); I.C. § 9-30-5-2(a), (b) (2010 Repl.) (OWI endangering another); I.C. § 9-30-5-1(a) (OWI with an blood-alcohol concentration of at least 0.08); I.C. § 9-30-5-3(a) (Supp. 2015) (elevating the OWI misdemeanor offenses to Level 6 felonies based on a previous OWI conviction).

The jury acquitted Wadle of Count I but found him guilty of the remaining charges. The trial court entered judgment of conviction and sentenced Wadle to an aggregate term of sixteen years executed with two years suspended to probation.[2]

In a unanimous opinion, our Court of Appeals affirmed in part and reversed in part, holding that, under the *Richardson* "actual evidence" test, Wadle's convictions under Counts II and III violated the Indiana Double Jeopardy Clause. *Wadle v. State*, 120 N.E.3d 253, 256–58 (Ind. Ct. App. 2019) (citing *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)). The panel recognized several cases in conflict with its holding. *Id.* at 258 n.4. But, while seeking clarification from this Court, the panel declined to address this tension in constitutional precedent on grounds that Wadle's convictions also violated the common-law rules against double jeopardy. *Id.* Under these rules, the panel held, the same harm caused by Wadle (striking Woodward with his car while driving drunk) impermissibly supported **both** the elevation of his conviction under Count II **and** his conviction under Count III. *Id.* at 259. The panel applied the same reasoning to Wadle's two other OWI convictions, both based on the same act of drunk driving. *Id.* To remedy these violations, the panel remanded with instructions for the trial court to vacate Wadle's convictions under Counts III, IV, and V while leaving in place his conviction and sentence under Count II. *Id.* at 261–62.

The State petitioned for transfer, which we granted, vacating the Court of Appeals decision. *See* Ind. Appellate Rule 58(A).

---

[2] While the court's sentencing order indicates no specific term for each offense, the abstract of judgment identifies the term for each count to be served concurrently with two years suspended to probation.

# Standard of Review

This case presents several questions of law, both statutory and constitutional, which we review de novo. *A.M. v. State*, 134 N.E.3d 361, 364 (Ind. 2019).

# Discussion and Decision

Wadle argues that the jury used the evidence supporting the elevation of his leaving-the-scene offense to also prove the elements of his OWI-SBI offense, a violation of the Indiana Double Jeopardy Clause under the *Richardson* "actual evidence" test. The State counters that Wadle's convictions simply reflect punishment for two separate and sequential harms: OWI-SBI followed by leaving the scene of an accident. Urging deference to "the express directive of the legislature," the State contends that Wadle's convictions must stand because they represent "two independent criminally culpable decisions," resulting in two different crimes. Pet. to Trans. at 8, 11; Reply in Support of Trans. at 4.

The dispute here forces us to confront long-standing tensions in our double-jeopardy jurisprudence, an area of the law plagued by multiple contextual applications, competing policy concerns, and shifting doctrinal formulations. These variables, a perennial source of confusion for the bench and bar, set the stage for our analysis in Part I of this opinion. We follow this discussion with a summary of *Richardson* and an in-depth survey of its progeny, ultimately leading to our departure from that precedent. *See infra* Section I.A.2. We then reassess the protective scope of our Double Jeopardy Clause, concluding that it operates only as a procedural bar to successive prosecutions for the same offense. *See infra* Section I.B.1. From there, and after clarifying the basic statutory and common-law protections against multiple punishments in a single trial, we proceed to articulate an analytical framework in which to resolve claims of substantive double jeopardy under Indiana law. *See infra* Sections I.B.2–3. We conclude Part I by discussing other constitutional protections on which defendants may rely to supplement these claims—protections, we believe, better suited to address the perpetual question of

whether a defendant's actions warrant multiple punishments in a single trial. *See infra* Section I.B.4. Finally, we apply our analytical framework to Wadle in Part II of our opinion, resolving this case on the merits.

# I. Conflicting precedent under our Double Jeopardy Clause calls for a reassessment of its protections.

The Indiana Double Jeopardy Clause, as with its federal counterpart, stands as a bedrock principle of our fundamental law. And yet, despite its façade of simplicity, few other constitutional guarantees present questions as vexing as those found in the ancient maxim that "[n]o person shall be put in jeopardy twice for the same offense." As a shield against the excesses of government prosecution, the basic premise of the Clause is clear enough. But the scope of its protection, and the circumstances in which it applies, engenders little consensus—and even significant confusion—among courts and commentators. Perhaps the most divisive— and confounding—question posed by this constitutional guarantee centers on the meaning of a single phrase: "same offense."

## A. How do we define "same offense"?

The protective scope of the Double Jeopardy Clause turns on the meaning of "same offense," a "phrase deceptively simple in appearance but virtually kaleidoscopic in application." *Whalen v. United States*, 445 U.S. 684, 700 (1980) (Rehnquist, J., dissenting). Indeed, "there has been, and remains, widespread confusion in the decisional law and in the commentary as to what constitutes the 'same offense,' and under what circumstances the protection against double jeopardy may be invoked." *Richardson*, 717 N.E.2d at 60 (Boehm, J., concurring).

Historically, the prohibition against double jeopardy—rooted in the English common law pleas of *autrefois acquit* (former acquittal) and *autrefois convict* (former conviction)—applied as a procedural bar to successive prosecutions for the same offense. Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 262, 265–66 nn. 1, 11–12 (1965). Because early American penal codes defined only a handful of criminal offenses, a person seldom

committed more than one violation in the same act or transaction. Strict rules of pleading and procedure likewise prevented multiple convictions in a single trial. *See* Abraham S. Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 Yale L.J. 1149, 1173–75 (1960) (summarizing common-law rules). By the mid-nineteenth century, however, this paradigm had shifted, the consequence of an expanding body of statutory law defining new—and often overlapping—criminal offenses.[3] Relaxed rules of pleading and procedure opened the door to further change, allowing prosecutors to join multiple related charges against a defendant—and even fragment those charges—for a single criminal act. While minimizing the likelihood of unwarranted acquittal, these multi-count indictments "greatly enhance[d] the potential penalty for any given criminal transaction."[4] Note, *Double Jeopardy and the Multiple-Count Indictment*, 57 Yale L.J. 132, 133 (1947).

To protect the interests of the accused, then, the prohibition against double jeopardy evolved beyond the procedural context to embody a substantive bar to multiple convictions or punishments for the "same offense" in a single trial.[5] Jay A. Sigler, *A History of Double Jeopardy*, 7 Am. J. Legal Hist. 283, 289 (1963). While the issues raised by these two strands of double jeopardy vary, the "crucial inquiry" remains constant: whether one charged offense is the "same" as another charged offense to trigger the constitutional protection. *Elmore v. State*, 269 Ind. 532, 534, 382 N.E.2d

---

[3] The Indiana Revised Code of 1852 identified 120 crimes, more than **double** the number of offenses defined at the time of statehood in 1816. David J. Bodenhamer, *Criminal Punishment in Antebellum Indiana: The Limits of Reform*, 82 Ind. Mag. Hist. 358, 372 (1986). Felonies alone rose from twenty in 1824 to forty-three in 1852. *Id.* at 372 n.62.

[4] Legislative initiatives to codify and recodify the criminal code have attempted to mitigate this problem in recent decades, albeit with limited success. *See* Note, *Res Judicata and Double Jeopardy in Indiana Criminal Procedure*, 33 Ind. L.J. 409, 428 (1958) (proposing codification as one potential way to "reduce the number of overlapping" offenses that apply to the "same activity" or "fact situation"); I.C. Ann. § 35-41-4-3 cmt. at 368 (West 1978) (noting the limited effect of such efforts).

[5] We use "conviction" and "punishment" interchangeably. Both terms implicate disabilities beyond just excessive sentences (including collateral consequences or increased vulnerability to habitual-offender status).

893, 895 (1978). The methods or standards on which courts have relied to resolve this question warrant a closer look for the proper context to our decision.

### 1. The meaning of "same offense" depends on the analytical framework applied.

In resolving claims of double jeopardy, courts have generally relied on one of two tests: (1) the "statutory elements" (or "required evidence") test and (2) the "actual evidence" test.[6] *See Richardson*, 717 N.E.2d at 42. The "**statutory elements**" test, as the name suggests, applies a comparative analysis of the statutory elements to determine whether two or more offenses are the "same." *Id.* at 42 n.21. This test is the standard currently used by the federal judiciary. As articulated by the United States Supreme Court, "where the same act or transaction" violates two distinct statutes, the question is whether each statute "**requires** proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (emphasis added). If the answer to this question is "yes," the two offenses are different; otherwise, the two offenses are the same. *Id.*

The "**actual evidence**" test, on the other hand, looks to whether two or more offenses are the same based on the evidence **actually** presented at trial, rather than engaging in a strict comparative analysis of the statutory elements.[7] *Richardson*, 717 N.E.2d at 42 n.23. This test, in other words, calls for an analysis of the evidence **as applied to**, rather than as required by,

---

[6] Courts and commentators often group these two tests under the nominal umbrella of a "same evidence" test. *See Richardson*, 717 N.E.2d at 42 & nn. 21, 23. Separate from this analytical framework is the "same transaction" test, which focuses on the defendant's alleged conduct or behavior to determine whether a prior conviction or acquittal bars a second prosecution. *See id.* at 41–42. For an historical overview of other "same offense" tests applied by Indiana courts, see generally Note, *Res Judicata and Double Jeopardy in Indiana Criminal Procedure*, 33 Ind. L.J. 409 (1958).

[7] A variation of the "actual evidence" test is the "alleged evidence" test, which finds two or more offenses the same "if there is sufficient similarity between the allegations of the two indictments." *See Richardson*, 717 N.E.2d at 42 & n.22 (citation omitted).

each element of the statutory offense.[8] Whereas the "statutory elements" test takes a more deferential approach to the legislative definition of an offense, the "actual evidence" test looks beyond the elements of a crime to determine whether two offenses are the "same."

Beyond these judicially-created tests, many states have enacted legislation prohibiting the conviction of a defendant—whether in a single trial or in successive proceedings—for both an offense and a "lesser included" offense. Jay A. Sigler, *Double Jeopardy: The Development of a Legal and Social Policy* 109 (1969). Indiana is no exception. *See* I.C. § 35-38-1-6 (2019) (single trial); I.C. § 35-41-4-3 (subsequent prosecution). This statutory bar rests on the longstanding common-law recognition that a "lesser included" offense is the "same" as its greater (encompassing) offense. *See, e.g.*, *Kokenes v. State*, 213 Ind. 476, 479, 13 N.E.2d 524, 525–26 (1938) ("A prosecution for any part of a single crime, bars any further prosecution based upon the whole or a part of the same crime."); *Wininger v. State*, 13 Ind. 540, 541 (1859) (relying on the same rule). *See also* 1 Joel Prentiss Bishop, *Commentaries on the Criminal Law* § 682, at 705 (2d ed., 1858) (illustrating this principle with concentric circles). Depending on the scope of protection, these statutes may expand or restrict the meaning of "same offense" in relation to the judicial tests described above. *See generally* Christen R. Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445, 455–62 (1984).

---

[8] For example, unlike the crime of burglary, the offense of attempted armed robbery does not **require** evidence of breaking and entering. *Compare* I.C. § 35-43-2-1 (2019) (burglary), *with* I.C. § 35-42-5-1 (robbery) *and* I.C. § 35-41-5-1 (attempt). Because the offenses aren't the "same" under the "statutory elements" test, there's no double-jeopardy violation. But when the analysis centers on the evidence **as applied**, that evidence, under the "actual evidence" test, may prove otherwise distinct elements under the respective statutory offenses. In *Lee v. State*, for example, the defendant argued that evidence of him barging into the victim's house could have satisfied both (1) the breaking-and-entering element of burglary and (2) the substantial-step element required for attempted armed robbery. This Court ultimately rejected that argument, citing evidence presented to the jury "beyond Lee's barging through the front door." 892 N.E.2d 1231, 1236 (Ind. 2008). But the case illustrates the possibility of finding double jeopardy based on the **actual evidence used** to convict, rather than relying solely on the evidence **required** by each element of the offense.

## 2. The "same offense" test in *Richardson v. State* created more confusion than clarity.

In *Richardson v. State*, this Court adopted analytical variations of **both** the "statutory elements" test and the "actual evidence" test. 717 N.E.2d at 49. As formulated by a majority of the Court, "two or more offenses are the 'same offense' in violation" of the Indiana Double Jeopardy Clause "if, with respect to **either** [1] the statutory elements of the challenged crimes **or** [2] the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense."[9] *Id.* The "statutory elements" test generally tracks the federal *Blockburger* analysis. *Id.* at 50 n.41. The "actual evidence" test, on the other hand, examines whether—based on the charging information, jury instructions, and arguments of counsel at trial—there's a "reasonable possibility" that the jury used the same evidence to support two or more convictions. *Id.* at 53; *Garrett v. State*, 992 N.E.2d 710, 720 (Ind. 2013).

By articulating these tests, the Court in *Richardson* set out to create a "single comprehensive rule" for resolving all substantive double-jeopardy claims under the Indiana Constitution. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). But despite this lofty goal, subsequent application of the rule quickly proved untenable, ultimately forcing the Court to retreat from its all-inclusive analytical framework.

To begin with, the adoption of two tests, rather than one, did little to reconcile decades of conflicting precedent. *See Richardson*, 717 N.E.2d at 49 (drawing upon several early Indiana cases, none of which "presented a comprehensive analysis, a generally articulated test, or a standard of review for double jeopardy claims"). This generated more confusion than

---

[9] In a separate concurring opinion, Justice Sullivan agreed with the majority's formulation of the actual-evidence test but found it unnecessary to extend that formulation beyond several categories of cases in which "this Court has been unwilling to impose multiple punishments upon a defendant who commits two crimes at the very same time against the same victim." 717 N.E.2d at 55 (Sullivan, J., concurring). Justice Boehm, with whom Justice Selby concurred, likewise agreed with the Court's formulation of the actual-evidence test but rejected that test as grounded in constitutional doctrine. *Id.* at 57 (Boehm, J., concurring).

clarity, causing some courts to conflate the separate tests. In *Berg v. State*, for example, the Court of Appeals concluded that the actual-evidence test could not be met when one offense "**required**" certain evidence that "the other offense did not." 45 N.E.3d 506, 510 (Ind. Ct. App. 2015) (emphasis added). *See also McElroy v. State*, 864 N.E.2d 392, 397 (Ind. Ct. App. 2007) (concluding that, under "either the statutory elements test or the actual evidence test," each charged offense "requires" proof of facts not required by the other).

Although likely devised for analytical flexibility in resolving complex double-jeopardy claims, the *Richardson* either/or approach has also led to inconsistent results, as courts selectively apply one test over another. For example, less than four months after *Richardson*, the Court of Appeals considered the actual-evidence test's application to Indiana's Racketeer Influenced and Corrupt Organizations (RICO) Act. *See Chavez v. State*, 722 N.E.2d 885, 893 (Ind. Ct. App. 2000). The RICO Act prohibits a person from committing a "corrupt business influence" through "a pattern of racketeering activity." I.C. § 35-45-6-2(2). This "pattern of racketeering activity" refers to the commission of (or conspiracy to commit) at least two predicate offenses (among an enumerated list of forty) within five years of each other. I.C. § 35-45-6-1(d), (e). In *Chavez*, the defendant argued that his convictions for corrupt business influence under the RICO Act **and** for the predicate offenses supporting the RICO charge failed the actual-evidence test.[10] 722 N.E.2d at 893–94. The Court of Appeals disagreed, concluding that "double jeopardy analysis employed for single-course of conduct crimes is not analogous to double jeopardy analysis in complex criminal enterprise cases." *Id.* at 894 (cleaned up). To conclude otherwise, the court reasoned, "would render RICO's intended threat of cumulative punishment powerless." *Id.* Invoking federal double-jeopardy principles,

---

[10] Along with the RICO Act violation, the State charged Chavez with dealing in marijuana and conspiracy to deal in marijuana. *Chavez*, 722 N.E.2d at 887. These separate charges are included among the predicate offenses enumerated under the RICO Act. *See* I.C. § 35-45-6-1(e)(34) (committing or conspiring to commit dealing in marijuana). The charging information (included among the evidence introduced at trial) alleged that this conduct "amounted to a pattern of racketeering activity." *Chavez*, 722 N.E.2d at 890.

the court found it illogical "that the legislature meant to **substitute** the RICO offense for the underlying predicate offenses rather than to permit prosecution" for both crimes. *Id.* (citing, among other federal precedent, *Albernaz v. United States*, 450 U.S. 333 (1981)).

A strict application of the actual-evidence test can also lead to illogical results—and not just in "complex criminal enterprise cases." In *Vestal v. State,* the defendant appealed his conviction for burglary and theft—the latter crime committed during the former. 745 N.E.2d 249 (Ind. Ct. App. 2001), *aff'd in part, vacated in part*, 773 N.E.2d 805 (Ind. 2002). Because the evidence proving the defendant's intent to commit theft (a necessary element of burglary as the intended felony) established the theft itself, application of the actual-evidence test would have resulted in a finding of double jeopardy.[11] The absurdity here, as the Court of Appeals correctly observed, is that the test treats the burglar who enters but fails to commit the theft just as harshly as the burglar who enters and completes the crime. 745 N.E.2d at 252. "The injustice," the court added to emphasize its point, "would be exacerbated if the underlying crime to the burglary were rape, murder or other more serious crime." *Id.* Concluding that *Richardson* "could not have intended such a result," the Court of Appeals interpreted "same evidence" to mean "evidence of the same act." *Id.* And because the defendant committed "two distinct acts" (burglary and theft), the court let both convictions stand. *Id.* On transfer, a majority of this Court found no double-jeopardy violation, reasoning that the evidence presented at trial "merely describe[d] the theft intended and did not compel the jury to find

---

[11] A conviction for burglary requires the State to prove that the defendant (1) broke into and entered a building (2) with the intent to commit a felony therein. I.C. § 35-43-2-1. A conviction for theft requires the State to prove that the defendant (1) knowingly or intentionally exerted unauthorized control over another person's property (2) with intent to deprive the other person of any part of its value or use. I.C. § 35-43-4-2(a).

the completed theft as an element of the burglary."[12] 773 N.E.2d at 807. This lack of persuasive reasoning compelled Justice Boehm to write separately, concurring in result but opining that the Court had effectively abandoned the actual-evidence test. *Id.* at 808.

Around the time these cases were decided, the Court's standard for analyzing actual-evidence test claims began to shift. As first articulated in *Richardson*, the test required a defendant to show "a reasonable possibility" that the jury used the same evidence "to establish the essential elements of one offense" and "the essential elements of a second challenged offense." 717 N.E.2d at 53. Subsequent formulations of this standard required the defendant to show that the "same evidence used by the jury to establish the essential elements" of one offense was "**included among** the evidence establishing the essential elements" of another offense. *Chapman v. State*, 719 N.E.2d 1232, 1234 (Ind. 1999) (emphasis added). But in early 2002, the Court declared the test as "**not** merely whether the evidentiary facts used to establish **one** of the essential elements of one offense may also have been used to establish **one** of the essential elements of a second challenged offense." *Spivey*, 761 N.E.2d at 833. Rather, the Court specified, there is no violation of the Double Jeopardy Clause "when the evidentiary facts establishing the essential elements of one offense" establish **less than all** of "the essential elements of a second offense." *Id.* Put simply, the "actual evidence" test, following *Spivey*, applies "to **all** the elements of **both** offenses." *Garrett*, 992 N.E.2d at 719 (emphasis added).

By redefining the standard used to determine whether two offenses are the "same offense," the *Spivey* Court—while invoking the actual-evidence

---

[12] The jury instructions related the charging information on both crimes. For burglary, the State alleged that the defendant "[broke] and enter[ed] the building or structure of another person, with intent to commit a felony, to-wit: broke and entered the Bottle Shop, with the intent to commit theft." *See Vestal*, 773 N.E.2d at 806 n.5. And for theft, the State alleged that the defendant "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, to wit, took [several bottles of alcohol and several cartons of cigarettes, along with] $92 in cash." *See id.*

test—effectively narrowed the scope of protection under the Indiana Double Jeopardy Clause. And this shift in analytical standard illuminated other problems in the Court's double-jeopardy jurisprudence. In *Gross v. State*, the defendant appealed his convictions for murder and robbery as a Class A felony, arguing that evidence of the same bodily injury (the victim's death) impermissibly elevated both offenses.[13] 769 N.E.2d 1136, 1138 (Ind. 2002). The Court initially concluded that the evidence proving the elements of murder fell short of proving **each** element of robbery as a Class A felony (specifically, the knowing or intentional taking of property from another person). *Id.* at 1139. Under *Spivey*, then, the Court found no double-jeopardy violation. *Id.* But that didn't end the inquiry. In reversing its method of analysis, the Court went on to find a "reasonable possibility" that the jury relied on evidence "establishing **all** the essential elements of robbery as a Class A felony to establish also **all** the essential elements of murder." *Id.* (emphasis added).

The problem with *Gross*, other than its analytical infidelity to *Spivey*, is that it renders the survival of a defendant's double-jeopardy challenge contingent on the **sequence of analysis** rather than any underlying principled legal theory.[14] This has left the actual-evidence test vulnerable to arbitrary application. In *Hines v. State*, for example, this Court found a double-jeopardy violation "because the facts establishing criminal confinement would also establish battery," even though the facts establishing the latter offense would not have established the former offense. 30 N.E.3d 1216, 1222 (Ind. 2015). *See also Bradley v. State*, 867

---

[13] A conviction for murder required the State to prove that the defendant "knowingly or intentionally kill[ed] another human being." I.C. § 35-42-1-1(1) (1998). And a conviction for robbery as a Class A felony required the State to prove that the defendant (1) knowingly or intentionally took property from another person (2) by putting a person in fear or using or threatening the use of force (3) that resulted in serious bodily injury. I.C. § 35-42-5-1.

[14] As noted above, *Spivey* found no double-jeopardy violation because the evidence establishing the elements of one offense established **less than all** the elements of a second offense. 761 N.E.2d at 833–34. *Gross*, on the other hand, effectively **permits** conviction for two offenses—Crime A and Crime B—if the evidence used to prove the elements of Crime A also prove the elements of Crime B, even when Crime B requires additional evidence to prove Crime A.

N.E.2d 1282, 1284–85 (Ind. 2007) (same). But in *Carrico v. State*, this Court found no double-jeopardy violation where evidence establishing murder established only one element of B felony robbery, even though evidence establishing the latter crime may have established the former. 775 N.E.2d 312, 314 (Ind. 2002). *See also Robinson v. State*, 775 N.E.2d 316, 320 (Ind. 2002) (same).

Failing to resolve all double-jeopardy claims under "a single comprehensive rule," the Court increasingly turned to the rules of statutory construction and common law announced by Justices Sullivan and Boehm in their respective *Richardson* concurrences. *See, e.g.*, *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). Under this analytical framework, described as "separate from and additional to" the protections under the actual-evidence test, *Guyton v. State*, 771 N.E.2d 1141, 1145 (Ind. 2002) (Dickson, J., concurring in result), the Court has retreated even further from *Richardson*, generating confusion among the bench and bar over the proper standard to address claims of double jeopardy, *see* Joel Schumm, *The Mounting Confusion over Double Jeopardy in Indiana*, Res Gestae, Oct. 2002, at 27–29.

What we're left with, then, is a patchwork of conflicting precedent, a jurisprudence of "double jeopardy double talk" that underscores *Richardson*'s inherent flaws. *See* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1807 (1997). The shifting standards and inconsistent application of controlling tests create an unpredictable approach to double jeopardy, ultimately depriving our courts of clear guidance and preventing the Indiana bar—defense counsel and prosecutors alike—from effectively preparing their cases and representing their clients.

For these reasons, we expressly overrule the constitutional tests formulated in *Richardson* as they apply to claims of substantive double

jeopardy.[15] We must now decide on the proper analytical framework for resolving these claims going forward.

## B. What's the proper analytical framework for resolving claims of substantive double jeopardy?

The "statutory elements" test and the "actual evidence" test have both proven inadequate, rendering our substantive double-jeopardy law either too restrictive or too generous of protection.[16] The latter test, as we have seen, is fair in principle but unwieldly in practice, subject to illogical results and vulnerable to confusion and misapplication. The "statutory elements" test, on the other hand, though relatively easy to apply, offers little protection to criminal defendants: so long as one charged offense diverges from another charged offense based on a single element of proof, prosecutors can easily circumvent the test.

The more practical approach, we believe, follows the familiar rules of statutory construction embraced by Justice Boehm in his concurring *Richardson* opinion. By adopting this methodology, we recognize the importance of charting a clear path going forward. To that end, we begin (1) by reassessing the protective scope of our Double Jeopardy Clause and

---

[15] Currently, the actual-evidence test also applies to the bar against procedural double jeopardy (*i.e.*, successive prosecutions for the same offense). *See Garrett*, 992 N.E.2d at 721. The *Garrett* Court appears to have limited its application of *Richardson* to the actual-evidence test only, implicitly excluding the statutory-elements test from claims of procedural double jeopardy. *See id.* (finding "no reason why the *Richardson* actual evidence test would not apply any time there are multiple verdicts, not simply multiple convictions, on the same facts"). Because Wadle's case presents no question of procedural double jeopardy, we expressly reserve any conclusion on whether to overrule *Richardson* in that context.

[16] The consensus among leading scholars is that "[neither] of the tests is adequate to implement the basic policies of double jeopardy." Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 275 (1965). *See also* Sigler, *Double Jeopardy, supra,* at 64, 101 (writing that, as judicial "stopgap" measures developed in response to the proliferation of overlapping criminal statutes, the tests "add contradictory and unpredictable elements" to the law); Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81, 115 (concluding that both tests will ultimately fail of their intended purpose); Note, *Double Jeopardy and the Multiple-Count Indictment*, 57 Yale L.J. at 136–37 (noting "uncertainty and inconsistency" in the tests).

(2) by clarifying the basic protections against multiple punishments in a single trial. We then (3) articulate an analytical framework in which to resolve claims of substantive double jeopardy and (4) consider other constitutional protections on which defendants may rely to supplement these claims.

## 1.  The Indiana Double Jeopardy Clause protects only against successive prosecutions for the same offense.

The question of whether constitutional double-jeopardy analysis applies to both the successive-prosecution and multiple-punishment contexts is a divisive one. Anne Bowen Poulin, *Double Jeopardy and Multiple Punishment: Cutting the Gordian Knot*, 77 U. Colo. L. Rev. 595, 600 (2006) (citing cases and commentary espousing opposite views). Courts often treat both strands the same, and "cases dealing with one context cite precedent from another without commenting on any potential difference between the two." *Richardson*, 717 N.E.2d at 59 (Boehm, J., concurring). After all, the reasoning goes, "the prosecution may not do in one trial what it is prohibited from doing in two trials." *Elmore,* 269 Ind. at 534, 382 N.E.2d at 894–95. But such an approach, Justice Boehm opined in *Richardson*, "results in an unsatisfactory compromise that breeds confusion and impairs the important values underlying the Double Jeopardy Clause." 717 N.E.2d at 58. We agree.

A "primary purpose" of the Double Jeopardy Clause is "to preserve the finality of judgments." *Crist v. Bretz*, 437 U.S. 28, 33 (1978).[17] By ensuring finality, this constitutional guarantee shields against governmental harassment in that it bars the state from making "**repeated attempts to convict** an accused for the same offense." *Thompson v. State*, 259 Ind. 587, 591, 290 N.E.2d 724, 726 (1972). Indeed, the absence of such restraint would subject the defendant "to embarrassment, expense and ordeal," effectively "compelling him to live in a continuing state of anxiety and insecurity." *Green v. United States*, 355 U.S. 184, 187 (1957). Finality also minimizes the risk of wrongful conviction upon retrial. Without the Double Jeopardy Clause, the state would have unfettered opportunity at "honing its trial strategies and perfecting its evidence" to ensure the defendant's condemnation. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). Whereas multiple punishments in a single trial raise concerns over excessiveness, a subsequent prosecution for the same offense "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even

---

[17] Our citation here to federal authority should not be read to "preclude formulation of an independent standard for analyzing state constitutional claims." *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind. 1998). The Indiana Double Jeopardy Clause and its federal counterpart under the Fifth Amendment both "look to a common interwoven history." *See id.* But this shared past does not mean that "the framers of the Indiana Constitution and the authors of the Fifth Amendment had the same objectives." *Id.* at 932. To the contrary, our Framers drafted the Indiana Bill of Rights fully aware that its "provisions would be the only constitutional protections against state and local government encroachment on individual rights." Hon. Loretta H. Rush & Marie Forney Miller, *A Constellation of Constitutions: Discovering & Embracing State Constitutions as Guardians of Civil Liberties*, 82 Alb. L. Rev. 1353, 1369–70 (2019). Indeed, more than a century would pass before Hoosiers would enjoy similar protections under the federal constitution. *See Benton v. Maryland*, 395 U.S. 784, 795–96 (1969) (applying the Fifth Amendment Double Jeopardy Clause to the states through incorporation under the Fourteenth Amendment). Even today, overdependence on federal law threatens to "strip a state constitution of its autonomous authority," weakening the division-of-powers framework on which our federal system of government stands. Rush & Forney Miller, *A Constellation of Constitutions*, 82 Alb. L. Rev. at 1357–58.

enhance the risk that an innocent defendant may be convicted."[18] *See Arizona v. Washington*, 434 U.S. 497, 503–04 (1978) (footnotes omitted).

To be sure, both strands of double jeopardy—substantive and procedural—share a "core policy" of preventing the state "from prosecuting and punishing arbitrarily, without legitimate justification." *Twice in Jeopardy*, 75 Yale L.J. at 267. But the procedural bar to double jeopardy, "whether following acquittals or convictions," placates "concerns that extend beyond merely the possibility of an enhanced sentence" or excessive punishment. *See Grady v. Corbin*, 495 U.S. 508, 518 (1990), *overruled by United States v. Dixon*, 509 U.S. 688 (1993).[19] And for this reason, our Double Jeopardy Clause should focus its protective scope exclusively on successive prosecutions for the "same offense."

Our conclusion here does not suggest that defendants enjoy no protection from multiple punishments in a single proceeding; it does, however, shift our analysis to other sources of protection—statutory, common law, and constitutional.

---

[18] Of course, the concept of finality itself isn't written in stone and may be outweighed by other policy interests. The State may prosecute a defendant a second time if, for example, the first trial ends in mistrial, an appellate court determines that the first trial was tainted with error, or if a second offense arising from the same conduct isn't complete at the time of the first trial. *See, respectively*, *Brock v. State*, 955 N.E.2d 195, 200 (Ind. 2011) ("[T]he defendant may be retried only if the government demonstrates that the mistrial was justified by a manifest necessity or that the ends of public justice would otherwise be defeated.") (quotation marks and citation omitted); *Townsend v. State*, 632 N.E.2d 727, 731 (Ind. 1994) ("Generally, double jeopardy does not bar retrial in cases of reversal for trial error."); *Cherry v. State*, 275 Ind. 14, 20, 414 N.E.2d 301, 305 (1981) (suggesting that the State may prosecute a second trial for a crime that was "not complete at the time of the first trial").

[19] Citing the need for doctrinal consistency, the majority in *Dixon* rejected the idea of applying separate analyses to "same offense" under the respective strands of substantive and procedural double jeopardy. *See* 509 U.S. at 704 (finding it "embarrassing to assert" that the phrase "has two different meanings—that what **is** the same offense is yet **not** the same offense"). But that approach, we believe, fails to account for the difference in underlying policies. What's more, this Court has defined "same offense" differently in other contexts. *See, e.g.*, Howard W. Anderson III, Note, *Determining When Two Offenses Are the Same Under Indiana's Criminal Rule 4*, 80 Ind. L.J. 825 (2005) (discussing the variation in standards used by the Court).

## 2. The substantive bar to double jeopardy restrains the judicial power to impose multiple punishments for the same offense, not the legislative authority to define crimes and fix punishments.

Indiana has long recognized the common-law principle that a "lesser included" offense is the "same" as its greater (encompassing) offense. *See, e.g.*, *Kokenes*, 213 Ind. at 479, 13 N.E.2d at 525–26 ("A prosecution for any part of a single crime, bars any further prosecution based upon the whole or a part of the same crime."); *Wininger*, 13 Ind. at 541 (relying on the same rule). Applying variations of this principle, this Court has declined to convict and punish a defendant in a single trial for (1) an offense and its lesser-included offense, (2) two offenses consisting of the same act, (3) one offense consisting of the same act as an element of another offense, (4) an elevation of an offense imposed for the same "behavior or harm" as another offense, and (5) a conspiracy where the overt act is the same act as another offense. *See Richardson*, 717 N.E.2d at 55–56 (Sullivan, J., concurring) (citing cases).[20] And today, we have legislation codifying these principles. *See* I.C. § 35-38-1-6 (2019) (prohibiting a trial court from entering judgment of conviction and sentence for both an offense and an "included offense"); I.C. § 35-41-5-3 (prohibiting conviction of "both a conspiracy and an attempt with respect to the same underlying crime" and prohibiting conviction of "both a crime and an attempt to commit the same crime").

Under these sources of authority, the substantive bar to double jeopardy restrains the **courts'** power to impose multiple punishments for

---

[20] We emphasize that, while the cases cited by Justice Sullivan generally reflect longstanding principles of Indiana law, they may rely on overruled sources of Indiana authority or apply analyses under the Fifth Amendment to the United States Constitution. *See, e.g.*, *Purter v. State*, 515 N.E.2d 858, 860 (Ind. 1987) (citing *Elmore*, 269 Ind. 532, 382 N.E.2d 893, for the proposition that "[t]his court has adopted" the federal *Blockburger* test). We further emphasize the limited precedential value of these cases because each substantive double-jeopardy claim turns on a unique set of facts, which—along with the applicable statutory offenses—an appellate court reviews de novo. *See infra*, Pt. I.B.3.

the same offense, not the legislative authority to define crimes and fix punishments. *See Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring) (citing precedent in which "this Court has been unwilling to impose multiple punishments" in a single trial); *id.* at 65 (Boehm, J., concurring) (concluding that courts should resolve substantive double-jeopardy claims "either by explicit direction from the legislature . . . or by commonly cited rules of statutory construction and presumed legislative intent"). In other words, a court may not exceed its authority by convicting and punishing a defendant in a single trial beyond what the statutes clearly permit. *See Jackson v. State*, 625 N.E.2d 1219, 1221 (Ind. 1993) (holding that multiple punishments may "be imposed for 'the same offense' where the will of the legislative body to do so is clear"); *W. Union Tel. Co. v. Axtell*, 69 Ind. 199, 202 (1879) (reciting the principle that a "court cannot create a penalty by construction, but must avoid it by construction, unless it is brought within the letter and the necessary meaning of the act creating it"); *Gillespie v. State*, 9 Ind. 380, 384–85 (1857) (concluding that the defendant's conviction for "assault and battery" in lieu of "assault and battery with intent to murder" fell within "the language and the spirit" of Indiana's 1852 included-offense statute).[21]

With this premise in mind, we now proceed to articulate an analytical framework in which to resolve claims of substantive double jeopardy.

### 3. Analysis of a substantive double jeopardy claim considers (a) the statutory offenses charged as well as (b) the facts underlying those offenses.

Substantive double jeopardy claims come in two principal varieties: (1) when a single criminal act or transaction violates a single statute but harms multiple victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more

---

[21] The statute cited in *Gillespie* permitted the conviction for "any offense, the commission of which is necessarily included in that with which [the defendant] is charged in the indictment." 9 Ind. at 384 (citation omitted).

victims. Our decision today in *Powell v. State*, --- N.E.3d --- (Ind. 2020), implicates the former scenario; this case implicates the latter. In either circumstance, the dispositive question is one of statutory intent. *See Paquette v. State*, 101 N.E.3d 234, 239 (Ind. 2018) (single statutory offense/multiple victims); *Emery v. State*, 717 N.E.2d 111, 112–13 (Ind. 1999) (multiple statutory offenses/single victim).

### a. The Statutory Offenses Charged

When multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutory language itself. (The mere existence of the statutes alone is insufficient for our analysis.) If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication,[22] the court's inquiry comes to an end and there is no violation of substantive double jeopardy.

If, however, the statutory language is not clear, a court must then apply our included-offense statutes to determine statutory intent. *See Collins v. State*, 645 N.E.2d 1089, 1093 (Ind. Ct. App. 1995) (noting that, to resolve a claim of substantive double jeopardy, our included-offense statutes guide judicial "analysis of legislative intent"), *aff'd in part, vacated in part on other grounds*, 659 N.E.2d 509 (Ind. 1995). Under Indiana Code section 35-38-1-6, a trial court may not enter judgment of conviction and sentence for both an offense and an "included offense." An "included offense," as defined by our legislature, is an offense

(1) that "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged,"

(2) that "consists of an attempt to commit the offense charged or an offense otherwise included therein," or

---

[22] Our tax code, for example, expressly permits the imposition of an excise tax on the delivery, possession, or manufacture of a controlled substance, "in addition to any criminal penalties" imposed under Title 35. I.C. § 6-7-3-20.

(3) that "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission."

I.C. § 35-31.5-2-168.[23]

If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy. If, however, one offense is included in the other (either inherently or as charged), the court must then look at the facts of the two crimes to determine whether the offenses are the same. *Richardson*, 717 N.E.2d at 67 (Boehm, J., concurring). *See also Bigler v. State*, 602 N.E.2d 509, 520 (Ind. Ct. App. 1992) (noting that "analysis of legislative intent" in Indiana, unlike the federal *Blockburger* test, "does not end with an evaluation and comparison of the specific statutory provisions which define the offenses").[24] This brings us to the second step of our inquiry.

---

[23] This definition is a variation of the Model Penal Code's included-offense statute, adopted in Indiana in 1976. *Compare* 1 Model Penal Code and Commentaries § 1.07(4) at 101–02 (Am. Law Inst. 1985) *with* Pub. L. No. 148-1976, § 1, 1976 Ind. Acts 718, 720 (codified as amended at I.C. § 35-31.5-2-168). *See also Richardson*, 717 N.E.2d at 65 (Boehm, J., concurring) (noting that Indiana's included-offense statutes "were taken in 1976 from the Model Penal Code"). The "main objective of Section 1.07" was "to limit the multiplicity of prosecutions and convictions for what is essentially the same conduct." 1 Model Penal Code and Commentaries § 1.07 cmt. at 104.

[24] Indeed, a "[c]onviction of an offense and an 'included offense'" under this rule "would not necessarily be barred under the *Blockburger* test." *See* 1 Model Penal Code and Commentaries § 1.07 cmt. at 108. *See, e.g., Sering v. State*, 488 N.E.2d 369, 375–76 (Ind. Ct. App. 1986) (holding that, while "not the 'same offense' under a *Blockburger* analysis," the offense of "operating a vehicle with BAC of .10% is a lesser included offense" of OWI "because the former offense differs from the latter offense in that a less serious risk of harm to the public interest is required to establish its commission"). Of course, *Blockburger*'s "statutory elements" test still governs our analysis of substantive double-jeopardy claims under the federal constitution. *See Games v. State*, 684 N.E.2d 466, 477 (Ind. 1997).

## b. The Facts Underlying the Charged Statutory Offenses

Once a court has analyzed the statutory offenses charged, it must then examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial.[25] *Bigler*, 602 N.E.2d at 521. Based on this information, a court must ask whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), *cited with approval by Hines*, 30 N.E.3d at 1219.[26]

If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, "included" in the other.[27] But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the prosecutor may charge these offenses only as alternative (rather than as

---

[25] This approach substantially mirrors the analytical framework we use to determine whether a party is entitled to an included-offense instruction at trial. *See Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995) (explaining that, "if a trial court has determined that an alleged lesser included offense is **either** inherently **or** factually included in the crime charged, it must look at the evidence presented in the case by both parties"). This is important because the standard used to identify an included-offense at trial effectively delineates the scope of the double-jeopardy protection on appeal. *See Moore v. State*, 698 N.E.2d 1203, 1208 (Ind. Ct. App. 1998) ("In light of the well-settled prohibition against convictions for both a greater offense and its included offense, if a *Wright* analysis determines that crime 'B' is an included offense of crime 'A', then double jeopardy precludes convictions for both.").

[26] The continuous-crime doctrine is "a rule of statutory construction and common law" applicable to "situations where a defendant has been charged multiple times with the **same offense**," rather than with "two distinct chargeable crimes." *Hines*, 30 N.E.3d at 1219 (emphasis added) (citations omitted). *See also Walker*, 932 N.E.2d at 737 (noting that the doctrine encompasses charges against a defendant for "an offense and a lesser included offense").

[27] Otherwise, a defendant could not be convicted for committing theft against a person on Monday **and** for committing robbery against that same person on Friday. *See Emery*, 717 N.E.2d at 114 (Boehm, J., concurring in result); *Tingle v. State*, 632 N.E.2d 345, 350 (Ind. 1994) (theft is an inherently included offense of robbery).

cumulative) sanctions.[28] The State can rebut this presumption only by showing that the statute—either in express terms or by unmistakable implication—clearly permits multiple punishment.

### 4. The bar against multiple punishments in a single trial enjoys other state constitutional protections.

Our conclusions today do not suggest that protection from multiple punishments in a single prosecution falls beyond the constitutional pale. To the contrary, legislators and prosecutors do not necessarily have free rein to authorize multiple punishments or to indict on multiple overlapping offenses. The Indiana Bill of Rights offers a larger framework of constitutional guarantees designed to protect Hoosiers "from the excesses of government." Chief Justice Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind. L. Rev. 575, 576 (1989). Our constitution also authorizes independent appellate review and revision of a criminal sentence found "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (implementing article 7, sections 4 and 6 of the Indiana Constitution). Substantive double-jeopardy protections in Indiana operate in harmony with, not in isolation from, these supplemental constitutional protections. And their importance to our decision today warrants more than passing reference.

---

[28] This presumption rests on two premises: First, it would be unreasonable to expect the legislature to consider the implications of **all** potential overlapping offenses when it adopts or amends a criminal statute. Indeed, penal sanctions permeate virtually every corner of the Indiana Code (not just Title 35). *See, e.g.*, I.C. § 6-5.5-7-3 (classifying tax fraud and tax evasion as a Level 6 felony); I.C. § 25-22.5-8-2 (criminalizing the unlawful practice of medicine and other unlicensed health occupations); I.C. § 3-14-3-1.1 (classifying voting fraud as a Level 6 felony). Second, the prohibition against cumulative punishment, absent clear statutory language to the contrary, corresponds with the principles of due process rooted in the constitutional rule of lenity. *See Healthscript, Inc. v. State*, 770 N.E.2d 810, 816 (Ind. 2002) (recognizing that, while "legislatures and not courts should define criminal activity," a statutory offense must give "fair warning" in plain terms "of what the law intends to do if a certain line is passed") (citations omitted).

### a. Article 1, Section 16

Article 1, section 16 of the Indiana Constitution requires that all penalties be "proportioned to the nature of the offense." While the responsibility for defining crimes and setting penalties lies with the legislative branch, section 16 "makes clear that the State's ability to exact punishment for criminal behavior is not without limit." *Conner v. State*, 626 N.E.2d 803, 806 (Ind. 1993). To be sure, our courts have struggled to articulate consistent, objective standards to identify whether a punishment is proportionate or disproportionate to an offense: Absent "a showing of clear constitutional infirmity," this Court generally will "not disturb the legislative determination of the appropriate penalty." *State v. Moss-Dwyer*, 686 N.E.2d 109, 111–12 (Ind. 1997). Other times, we ask if the severity of the punishment would "shock public sentiment and violate the judgment of a reasonable people." *Clark v. State*, 561 N.E.2d 759, 765 (Ind. 1990) (citation omitted). But even then, we typically defer to legislative discretion. *See id.*

Still, other circumstances implicating section 16's proportionality clause clearly call for judicial intervention. Specifically, this Court has long interpreted section 16 as prohibiting the legislature from imposing "punishment for a lesser included offense which is greater in years . . . than the greater offense." *Dembowski v. State*, 251 Ind. 250, 253, 240 N.E.2d 815, 817 (1968). To impose such a penalty amounts to an abuse of "Constitutional power to define criminal offenses and set penalties thereof." *Id.* at 252, 240 N.E.2d at 817. *See also Heathe v. State*, 257 Ind. 345, 349, 274 N.E.2d 697, 699 (1971) ("The constitutional mandate that 'all penalties shall be proportioned to the nature of the offense' requires that the maximum for a lesser offense be less than the maximum for a higher offense.").

### b. Article 1, Section 13

Our Bill of Rights also constrains the prosecutor's broad discretionary power to pursue multiple charges for the same offense. Article 1, section 13 of the Indiana Constitution guarantees the defendant's right, in "all criminal prosecutions," to "demand the nature and cause of the accusation

against him."[29] This protection entitles the defendant to "clear notice of the charge or charges against which the State summons him to defend" at trial. *Wright v. State*, 658 N.E.2d 563, 565 (Ind. 1995). Clear notice, by way of the prosecutor's indictment or information, allows the defendant to prepare his defense and protects him "from being placed twice in jeopardy for the same offense." *Id.* And due process entitles him to limit that defense to the crimes charged. *Young v. State*, 30 N.E.3d 719, 720 (Ind. 2015). "If there is reasonable doubt as to what the charge includes, such doubt must be resolved in favor of the defendant." *Id.* at 723 (cleaned up).

By definition, a lesser-included offense implicates a defendant's due process right to fair notice: unless the defendant himself requests an instruction on the offense (thereby waiving the notice requirement), he must defend against a charge not specifically pleaded in the prosecutor's indictment or information. Blair, *Constitutional Limitations*, *supra*, at 451–52. *See also Young*, 30 N.E.3d at 723 (observing that lesser inclusion and fair notice are not necessarily coextensive). Some courts have held that the indictment itself is "sufficient notice to the defendant that he may be called to defend the lesser included charge." Blair, *Constitutional Limitations*, *supra*, at 452 (citing cases). But this conclusion rests on a theory that compares the statutory elements of the included offense with the elements of the greater offense—a theory not entirely consistent with this Court's precedent **or** (as discussed above) with presumed legislative intent. *See Wright*, 658 N.E.2d at 566–67 (citing I.C. § 35-41-1-16 (1993), *recodified at* I.C. § 35-31.5-2-168)). Indeed, an included offense in Indiana need not contain the same elements as the charged offense; rather, the

---

[29] Our federal constitution similarly guarantees that, in "all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." U.S. Const. amend. VI.

former may be "inherently included" or "factually included" within the latter.[30] *See id.*

Because our legislature has expanded the potential range of included offenses beyond their mere statutory elements, the prosecutor must draft her charging instrument with sufficient precision to give the defendant proper notice of those offenses. Otherwise, deficient pleading notice— whether due to the omission of a statutory element or the omission of an operative fact—may bar an instruction on an alleged included offense, let alone a conviction on that offense.[31] *See Wright*, 658 N.E.2d at 567 (prohibiting a trial court from giving "a requested instruction on the alleged lesser included offense" if it's "neither **inherently** nor **factually** included in the crime charged"); *Peek v. State*, 454 N.E.2d 450, 453 (Ind. Ct. App. 1983) (reciting the principle that clear notice "operates to bar a conviction of a lesser included offense unless the charging instrument alleges all of the essential elements of that offense") (citation omitted). At the same time, there's nothing to prohibit the defendant from requesting such an instruction, so long as the evidence adduced at trial supports it. *See Wright*, 658 N.E.2d at 567. If the prosecutor can "wield factual omissions as a sword to preclude lesser offenses, an accused should be able to similarly rely on them as a shield to limit his defense to those

---

[30] An offense is "inherently included" if it "may be established by proof of the same material elements or less than all the material elements defining the crime charged" or if "the only feature distinguishing the two offenses is that a lesser culpability is required to establish the commission of the lesser offense." *Young*, 30 N.E.3d at 724 (quoting *Wright*, 658 N.E.2d at 566) (cleaned up). An offense is "factually included" when "the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* (cleaned up).

[31] A defendant **may** have constructive notice of an inherently included offense from our appellate court decisions. *See* Blair, *Constitutional Limitations*, 21 Am. Crim. L. Rev. at 453. *See also Wright*, 658 N.E.2d at 567 (citing precedent to support the conclusion that reckless homicide is "an inherently included offense" of murder). But there is no constructive notice when the issue is one of first impression, *see* Blair, *Constitutional Limitations*, *supra*, at 453, or, for that matter, when there is conflict in precedent or when the statutes charged have been significantly amended.

matters with which he stands accused." *Young*, 30 N.E.3d at 725 (internal quotation marks and citation omitted).

Finally, we note that, while the legislature may enact procedures for amending a charging instrument, it's limited in how it regulates amendments of substance (rather than of form).[32] And these procedural measures may **never** interfere with the defendant's due process right to clear notice of the charges against him. *See, e.g.*, *Hinshaw v. State*, 188 Ind. 147, 153, 122 N.E. 418, 420 (1919) (striking down as void, "so far as it applies to indictments," an act requiring the "opposing party" to move for specificity of allegations in all criminal pleadings).

### c. Article 7, Sections 4 and 6

The preceding sections under our Bill of Rights aren't the only potential constitutional remedies for a defendant facing cumulative punishment. Article 7, section 4 of the Indiana Constitution vests in this Court "the power to review all questions of law and to review and revise the sentence imposed." Our Court of Appeals exercises similar authority in criminal cases, "to the extent provided by rule." Ind. Const. art. 7, § 6. These constitutional mandates, as implemented through Indiana Appellate Rule 7(B), permit a criminal offender to challenge the trial court's sentence as "inappropriate in light of the nature of the offense and the character of the offender."

Despite the criticism it's received, article 7's review-and-revise clause stands as an effective check on the legislative proliferation of overlapping

---

[32] Our criminal code permits the prosecutor to amend a charging instrument "at any time" to correct an "immaterial defect" (*e.g.*, grammatical errors or misjoinder of parties) or for any other defect that's not prejudicial to "the substantial rights of the defendant." I.C. § 35-34-1-5(a). A prosecutor may amend the charging instrument for "matters of substance," but only before the commencement of trial. I.C. § 35-34-1-5(b).

criminal offenses and on the prosecutor's multi-count indictment.[33] *See Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003) (recognizing, as one factor driving the potential need to revise a cumulative sentence, the prosecutor's decision "to charge multiple aspects of the same event as separate counts defined by separate criminal statutes"). To be sure, article 7 vests no authority in an appellate court to vacate a conviction, potentially increasing the defendant's vulnerability to habitual-offender status or leaving him with no remedy to mitigate the collateral consequences of his offense. A defendant invoking Rule 7(B) also faces the prospect of a more severe sentence on appeal than what the trial court imposed. *McCullough v. State*, 900 N.E.2d 745, 749–50 (Ind. 2009). But when applied within the larger framework of constitutional guarantees designed to protect against "the excesses of government," Rule 7(B) offers a potentially valuable device in the defendant's legal toolbox—a device intended to curb cumulative punishment in a single proceeding "without turning conceptualistic handsprings." *See* Note, *Double Jeopardy and the Multiple-Count Indictment*, 57 Yale L.J. at 138 (noting the practical simplicity of sentencing review in contrast to double-jeopardy analysis).

We now proceed to the merits of Wadle's claim.

---

[33] For several years after its ratification and adoption, Indiana's appellate courts consistently declined to exercise their article 7 authority, expressing the "view that this power appears to go beyond that power which [we had] always possessed." *See Parker v. State*, 265 Ind. 595, 604, 358 N.E.2d 110, 114 (1976). *See also McHaney v. State*, 153 Ind. App. 590, 594, 288 N.E.2d 284, 286 (1972) (exercising restraint for fear of becoming an unintended "superlegislature"). Whatever the merits of this criticism, suffice it to say that independent appellate review of trial court sentencing rests firmly on the authority of the Indiana General Assembly (by way of the 1965 Judicial Study Commission) and, ultimately, the Hoosier electorate (by way of constitutional ratification). *See* Randall T. Shepard, *Robust Appellate Review of Sentences: Just How British Is Indiana?*, 93 Marq. L. Rev. 671, 671–73 (2009).

## II. Because the statutory offenses charged indicate alternative (rather than multiple) punishments, Wadle's convictions violate double jeopardy.

To reiterate our test, when multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutes themselves. If either statute clearly permits multiple punishment, whether expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy. But if the statutory language is not clear, then a court must apply our included-offense statutes to determine whether the charged offenses are the same. *See* I.C. § 35-31.5-2-168. If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy. But if one offense **is** included in the other (either inherently or as charged), then the court must examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial. If, based on these facts, the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," then the prosecutor may charge the offenses as alternative sanctions only. But if the defendant's actions prove otherwise, a court may convict on each charged offense.

Here, of the four offenses for which Wadle stands convicted, the State concedes that two of them—OWI endangering a person (Count IV) and OWI with a blood-alcohol concentration of 0.08 or more (Count V)— violate double jeopardy. We agree, even under our new analytical framework. Neither statute clearly permits cumulative punishment and the latter offense is an included offense of the former. *See Kovats v. State*, 982 N.E.2d 409, 414 (Ind. Ct. App. 2013) (holding that misdemeanor OWIs are lesser included offenses of a felony OWI). What's more, neither party insists that the facts show two distinct crimes.

That leaves Wadle with two convictions: (1) leaving the scene of an accident, and (2) OWI causing serious bodily injury (or OWI-SBI). An "operator of a motor vehicle" commits the first offense, a Class B misdemeanor, when he or she "knowingly or intentionally" leaves the

scene of an accident without providing the necessary information and assistance. I.C. § 9-26-1-1.1(a), (b) (2015 Supp.). This offense becomes a Level 3 felony when, as here, the operator leaves the scene of an accident "during or after the commission of the offense of operating while intoxicated causing serious bodily injury (IC 9-30-5-4)." I.C. § 9-26-1-1.1(b)(4). The second offense, OWI-SBI, occurs when a person "causes serious bodily injury to another person when operating a vehicle . . . while intoxicated." I.C. § 9-30-5-4(a) (2014). This offense rises from a Level 6 felony to a Level 5 felony if, at the time of committing the offense, the person had been convicted of OWI within the preceding five years. *Id.*

Neither statute clearly permits multiple punishments, either expressly or by unmistakable implication. To be sure, both statutes—respectively— permit an enhanced punishment. But an enhanced punishment, whether based on attendant circumstances or on a prior conviction, presents no "double jeopardy issue at all." *See Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999) (enhanced punishment based on "circumstances surrounding" the crime). *See also Mayo v. State*, 681 N.E.2d 689, 694 (Ind. 1997) (enhancement is neither "a new jeopardy" nor an "additional penalty" for an earlier offense, but rather "a stiffened penalty for the latest crime") (citation omitted). Because the elevation is "not a separate offense or conviction," double-jeopardy analysis is simply inapposite. *Workman*, 716 N.E.2d at 448. *See also Woods v. State*, 234 Ind. 598, 608, 130 N.E.2d 139, 143–44 (1955) (applying this principle to vacate several OWI convictions).

With no statutory language clearly permitting multiple convictions, we now analyze the offenses charged under our included-offense statutes. Here, both statutes involve operating a vehicle while intoxicated resulting in serious bodily injury. The only difference is that one offense (OWI-SBI) creates "a less serious harm or risk of harm to the same person, property, or public interest" than the other offense (leaving the scene "during or

after" OWI-SBI).[34] *See* I.C. § 35-31.5-2-168(3). *See also Sering v. State*, 488 N.E.2d 369, 376 (Ind. Ct. App. 1986) (the offense of "operating a vehicle with BAC of .10% is a lesser included offense" of OWI "because the former offense [a class C misdemeanor] differs from the latter offense [a class A misdemeanor] in that a less serious risk of harm to the public interest is required to establish its commission"). Given the "disparate classification of the two offenses," *see id.*, we conclude that Level 5 felony OWI-SBI is included in (*i.e.*, is the "same" as) the offense of Level 3 felony leaving the scene of an accident.

Having determined that one offense is included in the other, we must now look at the facts to determine whether the two offenses are the same. Within a matter of "minutes," Wadle physically attacked Woodward in the parking lot, retreated to his car, struck his victim twice, pinned him under a guardrail, and then fled the scene. Tr. Vol. 1, pp. 118, 247. Wadle, according to the prosecutor, had but a single objective—he "wanted a fight so he started one and he finished it by running over a man twice his age." *Id.* at 61. Elaborating on the mayhem caused that fateful night, the prosecutor, in both opening and closing arguments, characterized Wadle's actions as a virtually seamless string of events: "There was one person who was acting up in the bar that night. One person asking for a fight, one person who took off their shirt. One person who used his vehicle to chase down and strike a man," the prosecutor continued, "one person who drove over the curb across the grass, one person who backed up and drove over that man a second time. One person who didn't stop until he hit a guard rail. One person who fled the scene." *Id.* at 60.

Because Wadle's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action," we consider them "one continuous transaction." *See Walker*, 932 N.E.2d at 735. *Cf. id.* at 737–38

---

[34] The mere reference in the leaving-the-scene statute to the separate offense of OWI-SBI evinces no statutory intent to permit conviction and punishment under both. *Cf.* I.C. § 6-7-3-20 (2019) ("The excise taxes required by this chapter are intended to be **in addition to any criminal penalties** under IC 35-48-4 [offenses related to controlled substances].") (emphasis added).

(concluding that the doctrine did not apply because each statutory offense—burglary, robbery, and criminal confinement—was a "distinct chargeable crime" with multiple victims involved, not "an offense and a lesser included offense"); *Firestone v. State*, 838 N.E.2d 468, 472 (Ind. Ct. App. 2005) (holding that convictions for rape and criminal deviate conduct did not violate the doctrine because the defendant "clearly committed two different offenses at different times").

Still, the State contends that the legislature intended to punish Wadle "for the two separate and sequential harms that he caused: OWI causing serious bodily injury **and then** leaving the scene of an accident." Appellee's Br. at 8 (emphasis added). In other words, because "Wadle committed OWI causing serious bodily injury **before** he left the scene of the accident," the State argues that his conviction for both offenses resulted in no double-jeopardy violation. *Id.* at 11. We disagree and find no such evidence of legislative intent.

Our General Assembly defined the leaving-the-scene offense as a Level 3 felony when the operator leaves the scene of an accident "during or after" committing OWI-SBI. *See* I.C. § 9-26-1-1.1(b)(4) (Supp. 2015). But that phrase articulates no definite period in which one offense begins and the other ends.[35] *See Hines*, 30 N.E.3d at 1220 (noting that "our Legislature has the inherent power to define crimes, including when a crime may subsist for a definite period or cover successive, similar occurrences") (citations omitted). Without clear legislative guidance, there's "simply no way to make sense out of the notion that a course of conduct is 'really' only one act, rather than two or three, or, indeed, as many as one likes." Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81, 114. *Accord Eddy v. State*, 496 N.E.2d 24, 27–28 (Ind. 1986) (declining to interpret the phrases "during" or "while committing" as requiring the "chronological completion" of one offense before the

---

[35] In fact, the phrase "during or after" makes any temporal restriction to the offense even more **indefinite** than language found in other statutory offenses. *See, e.g.*, I.C. § 35-42-1-1 (2014 Repl.) (defining felony murder as the knowing or intentional killing of another person "while committing" one of several enumerated crimes).

completion of another offense). And prosecutors cannot avoid double jeopardy "by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169 (1977). *Accord Jackson v. State*, 14 Ind. 327, 328 (1860) ("The state cannot split up one crime and prosecute it in parts."). Even if we could distinguish Wadle's acts to find two separate offenses, the prosecutor made no temporal distinction in either the charging instrument or the jury instructions, both of which alleged that Wadle "knowingly or intentionally fail[ed] to stop . . . at the scene of the accident as required by law **during or after** he caused serious bodily injury" to Woodward. Appellant's App. Vol. II, p. 104 (emphasis added). *See also id.* at 123, 134.

In sum, we conclude that the separate statutory offenses—Level 5 felony OWI-SBI and Level 3 felony leaving the scene of an accident— present alternative (rather than cumulative) sanctions on which to charge Wadle.

When the defendant is found guilty of both the included offense and the greater offense, the trial court may not enter judgment and sentence for the included offense. I.C. § 35-38-1-6 (2014 Repl.). To remedy Wadle's conviction for both offenses, then, we accept the State's proposal of vacating his Level 5 felony OWI-SBI conviction (Count III) while leaving in place his Level 3 felony conviction for leaving the scene (Count II).[36] (See Appellee's Br. at 14.) And because this conviction alone justifies the penalty imposed, *see* I.C. § 35-50-2-5, we further instruct the trial court to

---

[36] The State argues in the alternative that we "may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the [double-jeopardy] violation." Appellee's Br. at 13 (citing *Zieman v. State*, 990 N.E.2d 53, 64 (Ind. Ct. App. 2013)). But our included-offense statute prohibits the trial court from entering judgment and sentence for the included offense when the defendant is found guilty of both the included offense and the charged offense. I.C. § 35-38-1-6. The only remedy, then, is to vacate conviction of the included offense. Simply reducing Wadle's conviction to a "less serious offense" threatens to circumvent his constitutional right to "clear notice of the charge or charges against which the State summon[ed] him to defend" at trial. *See Wright*, 658 N.E.2d at 565 (citing Ind. Const. art. 1, § 13).

leave in place Wadle's sixteen-year sentence with two years suspended to probation.

# Conclusion

For the reasons above, we hold that Wadle's multiple convictions violate the statutory prohibition against substantive double jeopardy. Accordingly, we affirm in part, reverse in part, and remand with instructions for the trial court to vacate his convictions on all counts, save for his Level 3 felony conviction for leaving the scene of an accident (Count II). And because this conviction alone justifies the penalty imposed, *see* I.C. § 35-50-2-5, we further instruct the trial court to leave in place Wadle's sixteen-year sentence with two years suspended to probation.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.

ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana